723 F.2d 1348
 Gary WALDRON, Plaintiff-Appellant,
v.
Joseph McATEE, in his capacity as Chief of Police of the
Indianapolis Police Department, William Hudnut, in his
capacity as Mayor of the City of Indianapolis, and the
Marion County City-County Council, Defendants-Appellees.
 No. 83-1358.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 21, 1983.
Decided Dec. 22, 1983.
 
 Richard L. Zweig, Indianapolis, Ind., for plaintiff-appellant.
 Stephen E. Schrumpf, Indianapolis, Ind., for defendants-appellees.
 Before ESCHBACH and POSNER, Circuit Judges, and SWYGERT, Senior Circuit Judge.
 POSNER, Circuit Judge.
 
 
 1
 We are asked to hold Indianapolis's loitering ordinance unconstitutionally vague, but must first decide whether this is a suitable case for abstention.
 
 
 2
 Shortly before midnight on November 1, 1980, the plaintiff, Waldron, a law student, was driving his new Cadillac in downtown Indianapolis. While stopped at a traffic light he noticed a friend of his in an automobile in the next lane. They agreed to meet in a few minutes in front of the Marion County Public Library. They drove there, parked their cars, got out, and were chatting on the sidewalk (apparently with a third person, who had been a passenger in Waldron's car), when several policemen approached and told them to move along. When Waldron asked why, he was told that he and his friends were violating the city's loitering ordinance, that "There are only faggots, thieves and police out here at this time of night," and that they would be arrested for loitering if they were ever again found late at night in the vicinity of either the library or Monument Circle. Waldron and company left; they were not arrested.
 
 
 3
 Section 20-9(a) ("Loitering") of the Code of Indianapolis and Marion County, adopted in 1979, provides:
 
 
 4
 No person shall loiter or prowl in a place, at a time or in a manner not usual for law abiding citizens, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity, in any public way, street, highway, place, or alley and refuse to obey the lawful command of a police officer to move on or provide to said police officer a lawful reason for remaining on said public way, street, highway, place or alley if the alleged loitering by said person would create or cause to be created any of the following:
 
 
 5
 (1) Danger of a breach of the peace;
 
 
 6
 (2) The unreasonable danger of a disturbance to the comfort and repose of any person acting lawfully on or in a public way, street, highway, place, or alley reserved for pedestrians;
 
 
 7
 (3) The obstruction or attempted obstruction of the free normal flow of vehicular traffic or the normal passage of pedestrian traffic upon any public way, street, highway, place, or alley;
 
 
 8
 (4) The obstruction, molestation or interference or attempt to obstruct, molest or interfere with any person lawfully on or in a public way, street, highway, place, or alley to fear for his or her safety.
 
 
 9
 Violation is punishable by a fine of up to $500. See section 20-9(f).
 
 
 10
 Waldron brought this suit on July 13, 1981, against the mayor, police chief, and council of Indianapolis. The complaint is based on section 1 of the Civil Rights Act of 1871, 42 U.S.C. Sec. 1983, and seeks a declaration that the loitering ordinance, both as applied to Waldron's conduct on the night of November 1, 1980, and on its face (i.e., as it might be applied to other conduct), is void for vagueness under the First Amendment (made applicable to the states by the due process clause of the Fourteenth Amendment). The complaint also seeks a permanent injunction against enforcing the ordinance. Waldron submitted an affidavit, not contradicted, which states that he is afraid to congregate with his friends at night on the sidewalks of downtown Indianapolis for fear of being arrested for violating the ordinance. The district court, 556 F.Supp. 101, on motion for summary judgment held that the ordinance was not unconstitutionally vague and so dismissed the complaint on the merits, and Waldron appeals.
 
 
 11
 The district court stated without amplification that the case was not suitable for abstention, that is, for requiring Waldron to proceed first in the Indiana courts; and the defendants, preferring that we uphold the district court on the merits, have not asked us to abstain. Although not abstaining in a case where abstention would be proper would not deprive a federal court of its subject-matter jurisdiction--abstention presupposes jurisdiction--the court has the power and in an appropriate case the duty to order abstention, if necessary for the first time at the appellate level, even though no party is asking for it. See, e.g., Bellotti v. Baird, 428 U.S. 132, 143 and n. 10, 96 S.Ct. 2857, 2864 and n. 10, 49 L.Ed.2d 844 (1976); Naylor v. Case & McGrath, Inc., 585 F.2d 557, 563 (2d Cir.1978); 17 Wright, Miller & Cooper, Federal Practice and Procedure Sec. 4243 at pp. 471-72 (1978). When a court abstains in order to avoid unnecessary constitutional adjudication ("Pullman" abstention, after Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)), it is not seeking to protect the rights of one of the parties; it is seeking to promote a harmonious federal system by avoiding a collision between the federal courts and state (including local) legislatures.
 
 
 12
 The doctrine of abstention has its detractors. See, e.g., Currie, The Federal Courts and the American Law Institute: Part II, 36 U.Chi.L.Rev. 268, 311-17 (1969). They point out that nothing in Article III or the Judicial Code authorizes the federal courts to decline to exercise the jurisdiction that has been given them. And they point out that the practical effect of invoking the doctrine is not only to deny the holder of a federal right the opportunity to enforce it in a federal court (other than by seeking review on certiorari in the Supreme Court of an adverse judgment by the state court on his federal claim) but to subject him to long delay; for abstention, which will require him to start over in state court, often is not ordered till the federal court suit is far advanced. Waldron brought this suit more than two years ago, and if he has to start over in an Indiana state court it may be several more years before he can get a judgment.
 
 
 13
 But the doctrine also has its vigorous defenders, see, e.g., Friendly, Federal Jurisdiction: A General View 92-96 (1973), and after falling into some judicial disfavor in the 1960s is once again solidly established. See Babbitt v. United Farm Workers, 442 U.S. 289, 307-12, 99 S.Ct. 2301, 2313-16, 60 L.Ed.2d 895 (1979); Boehning v. Indiana State Employees Ass'n, 423 U.S. 6, 96 S.Ct. 168, 46 L.Ed.2d 148 (1975) (per curiam); Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 510-12, 92 S.Ct. 1749, 1757-58, 32 L.Ed.2d 257 (1972); City Investing Co. v. Simcox, 633 F.2d 56, 60 (7th Cir.1980); Yesterday's Children v. Kennedy, 569 F.2d 431, 434-36 (7th Cir.1977); Currie, Federal Courts: Cases and Materials 625-27 (3d ed. 1982). The objection that it deprives a federal claimant of a federal forum to which he is statutorily entitled has been met by allowing him to reserve his federal issues for decision by the federal court after the state court has decided the state issues. See England v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); Fair Assessment in Real Estate Ass'n v. McNary, 454 U.S. 100, 120 n. 4, 102 S.Ct. 177, 181 n. 4, 70 L.Ed.2d 271 (1981).
 
 
 14
 Even those judges who are acutely sensitive to the effect of the abstention doctrine in delaying, and by delaying sometimes defeating, the enforcement of federal rights have approved its use where "a state statute is susceptible of a construction that would avoid or significantly alter a constitutional issue ...." Babbitt v. United Farm Workers, supra, 442 U.S. at 314, 99 S.Ct. at 2317 (Brennan, J., concurring and dissenting). See also Justice Brennan's opinion for the Court in the Lake Carriers' case, supra. The good sense of this position is evident. "One type of case almost universally recognized as appropriate for abstention is that of a state statute, not yet construed by the state courts, which is susceptible of one construction that would render it free from federal constitutional objection and another that would not. A federal court should not place itself in the position of holding the statute unconstitutional by giving it the latter construction, only to find that the highest court of the state will render the decision futile and unnecessary by adopting the former. Such a decision not only is a waste of judicial resources but provokes a needless collision between state and federal power." Friendly, supra, at 93.
 
 
 15
 The prerequisites for abstention are satisfied in this case. Indianapolis's loitering ordinance really is vague, especially the phrases "danger of a breach of the peace" and "unreasonable danger of a disturbance to the comfort and repose of any person ...." If it were so hopelessly vague that no feat of interpretation could save it from being invalidated as an undue burden on freedom of speech and assembly, abstention would be inappropriate. But it is not that vague. The ordinance seems to be modeled, if somewhat loosely, on the Model Penal Code, which (so far as relevant to this case) provides: "A person commits a violation if he loiters or prowls in a place, at a time, or in a manner not usual for law-abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity." American Law Institute, Model Penal Code and Commentaries: Official Draft and Revised Comments Sec. 250.6 (1980). Although even this formulation may be too vague, there is authority that it is not (see id. at 396) and we hesitate to conclude that no loitering law could be drafted that would pass constitutional muster--the practical consequence of rejecting the Model Penal Code's careful formulation. And it is possible that "danger of a breach of the peace" and "unreasonable danger of a disturbance to ... comfort and repose" in the Indianapolis ordinance mean the same thing as "circumstances that warrant alarm for the safety of persons or property in the vicinity" in the Model Penal Code. Camarco v. City of Orange, 61 N.J. 463, 295 A.2d 353 (1972), dealing with an ordinance very similar to the one in this case, read "create or cause to be created any disturbance or annoyance to the comfort and repose of any person" to mean "so disturb a person as to cause such person to react immediately in such a way as to threaten by physical violence the peace and order of the public," and upheld the constitutionality of the ordinance as so interpreted.
 
 
 16
 Only a state court can authoritatively interpret its own state's statutes and ordinances. United States v. Thirty-Seven Photographs, 402 U.S. 363, 369, 91 S.Ct. 1400, 1404, 28 L.Ed.2d 822 (1971). Waldron's reply brief recognizes this point in stating that "in Camarco the state rather than federal court made the narrowing construction. In this case, it is the obligation of the federal court to give the words their fair and plain meaning." The Indiana state courts have not yet interpreted Indianapolis's loitering ordinance, and their doors are open to Waldron. Indiana's version of the Uniform Declaratory Judgment Act, Ind.Code Sec. 34-4-10-1 et seq., can be used to challenge the application and validity of an ordinance in advance of violation. See Neswick v. Board of Comm'rs, 426 N.E.2d 50 (Ind.App.1981). State courts have the power, indeed the duty, see Testa v. Katt, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947), to pass on questions of federal law that arise in cases properly brought in their courts--though as we have said Waldron may if he wants reserve his federal questions for decision by the federal courts after the state courts interpret the loitering ordinance. Although ordering abstention this late in the day will subject Waldron to additional, and maybe considerable, delay in getting a final adjudication of his federal rights, we imagine that his goals in this litigation are more symbolic than practical--that he is not really burning with impatience to congregate with his friends at midnight in front of the Marion County Public Library or in Monument Circle. For he waited almost nine months after the incident with the police to file this lawsuit.
 
 
 17
 Moreover, it is only by chance that he can sue in a federal court at all. If he had refused to move on when ordered to do so by the police, and had been arrested and charged with violation of the loitering ordinance, he could not have challenged the ordinance's constitutionality other than by pleading its unconstitutionality as a defense in the state court proceeding to punish him for his alleged violation. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). If a plaintiff has not been charged he does not have a Younger problem, of course, but he may have a ripeness or a standing problem. Cf. Public Service Comm'n v. Wycoff Co., 344 U.S. 237, 244, 73 S.Ct. 236, 240, 97 L.Ed. 291 (1952); People of State of Illinois v. General Electric Co., 683 F.2d 206, 210 (7th Cir.1982). Waldron does not have such a problem only because he was threatened with being arrested if he does what we are constrained by his uncontradicted affidavit to assume he really wants to do. A number of other vagueness cases have gotten into the federal courts on a similar basis, see, e.g., Kolender v. Lawson, --- U.S. ----, 103 S.Ct. 1855, 1857, 75 L.Ed.2d 903 (1983), and some have gotten in after a sanction for violating the law was imposed. See, e.g., Baer v. City of Wauwatosa, 716 F.2d 1117, 1123-25 (7th Cir.1983). But the point remains that access to the federal courts is by no means guaranteed when a statute or ordinance is challenged as being unconstitutionally vague; and certainly Waldron should not feel unfairly deprived by being forced to litigate merely the applicability of the Indianapolis loitering ordinance in the state courts of Indiana, being able to return if he wants to the federal district court to litigate any federal questions there.
 
 
 18
 We said earlier that the Indiana courts might put a gloss on Indianapolis's loitering ordinance that could significantly alter the constitutional issue that Waldron wants us to decide, and maybe save the ordinance from being struck down. But in fact the state proceeding might moot out the federal case altogether, which makes this an even stronger case for abstention. Although Waldron wants to challenge the validity of the ordinance not only as applied to his own conduct but on its face, he will have no standing to make the broader challenge should the Indiana courts hold the ordinance inapplicable to the type of conduct in which he engaged on the night of November 1, 1980, and wants to engage in the future. For then the ordinance could not harm Waldron, and though it might harm others he does not have standing to assert the rights of third parties. See, e.g., Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979).
 
 
 19
 A person who violates a law may sometimes defend on the basis of what the law does to some third party, see, e.g., Craig v. Boren, 429 U.S. 190, 194-97, 97 S.Ct. 451, 455-56, 50 L.Ed.2d 397 (1976), particularly in cases where the law may, by reason of being vague or overbroad, deter the third party from exercising his First Amendment rights. See, e.g., Thornhill v. Alabama, 310 U.S. 88, 97-98, 60 S.Ct. 736, 741-42, 84 L.Ed. 1093 (1940); Gooding v. Wilson, 405 U.S. 518, 520-21, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972). But if you want to raise someone else's objections to a law, you must have been punished for disobeying it, or have otherwise been injured by its operation. If you have not been injured at all you do not have standing to bring a federal suit. See, e.g., Heald v. District of Columbia, 259 U.S. 114, 123, 42 S.Ct. 434, 435, 66 L.Ed. 852 (1922). A resident of Chicago who had no plans to travel to Indianapolis could not challenge Indianapolis's loitering ordinance on the ground that it was destroying freedom of speech or assembly in Indianapolis; and no more can Waldron challenge the ordinance if the Indiana state courts interpret it not to apply to his conduct, past, present, or future. As well they might. The ordinance as we have seen punishes only "loitering" or "prowling" that (so far as this case is concerned) creates either a "danger of a breach of the peace" or an "unreasonable danger of a disturbance to the comfort and repose of any person acting lawfully on or in a public way ...," and it is hard to see how three people conversing outside a public library, even at midnight, could be thought to create a danger of a breach of the peace or an unreasonable danger of disturbing anyone's "comfort and repose," at least if this language is interpreted sensibly. It is quite possible therefore that the police exceeded their authority under the ordinance and that the Indiana courts will make this clear. If so, the police might be subject to a civil rights suit but the ordinance would not be vulnerable, at least in a suit by Waldron, for it would not be a source of actual or even potential harm to him.
 
 
 20
 It is essential therefore to know whether the kind of conduct that Waldron engaged in on November 1, 1980, and that he wants to repeat, violates the ordinance; and to know that you must know what the ordinance means. It could of course be argued that if an ordinance is vague it cannot be saved by judicial interpretation, for how can people be charged with knowledge of court decisions as well as of statutory language? But the element of unreality in the void-for-vagueness doctrine goes deeper than that. The truth is that few people have any but the most general idea of what is contained in statutes and ordinances; surely not one in a thousand Indianapolitans has actually read the city's loitering ordinance. The practical effect of the vagueness doctrine is not to make statutes readable by the laity but to limit the discretion of police and prosecutors--a purpose of the doctrine that is receiving increasing recognition. See, e.g., Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972); Papachristou v. City of Jacksonville, 405 U.S. 156, 168-69, 92 S.Ct. 839, 846-47, 31 L.Ed.2d 110 (1972); Kolender v. Lawson, supra, 103 S.Ct. at 1858-59; Levas & Levas v. Village of Antioch, 684 F.2d 446, 452-53 (7th Cir.1982); Aladdin's Castle, Inc. v. City of Mesquite, 630 F.2d 1029, 1037 (5th Cir.1980), rev'd on other grounds, 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982). And for that purpose the language of a judicial opinion is as good as the language of the statute or ordinance construed in the opinion. If the Indiana state courts can give the loitering ordinance a gloss that puts Waldron out of any danger of being arrested for peaceable assembly he cannot complain because the gloss is not worked into the text of the ordinance itself. "[T]he statute must be carefully drawn or be authoritatively construed to punish only unprotected speech ...." Gooding v. Wilson, supra, 405 U.S. at 522, 92 S.Ct. at 1106 (emphasis added). See also id. at 522-23, 92 S.Ct. at 1106; Chaplinsky v. New Hampshire, 315 U.S. 568, 573, 62 S.Ct. 766, 770, 86 L.Ed. 1031 (1942); Welton v. Nix, 719 F.2d 969 at 970 (8th Cir.1983).
 
 
 21
 We conclude that this is a good case for abstention--despite Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). The plaintiffs challenged, as unconstitutionally vague on their face, two state statutes requiring oaths as a condition of public employment. The Supreme Court refused to abstain but said that abstention might be proper in a case where an ordinance was challenged as being vague in its application to particular conduct. See id. at 376-77, 84 S.Ct. at 1325. And indeed when such a case arose the Supreme Court ordered abstention, distinguishing Baggett. Babbitt v. United Farm Workers, supra, 442 U.S. at 308, 99 S.Ct. at 2314. The distinction is repeated in other cases, notably Steffel v. Thompson, 415 U.S. 452, 474 n. 21, 94 S.Ct. 1209, 1223, n. 21, 39 L.Ed.2d 505 (1974), and Procunier v. Martinez, 416 U.S. 396, 401 n. 5, 94 S.Ct. 1800, 1805, n. 5, 40 L.Ed.2d 224 (1974). If a statute is attacked as being excessively vague on its face, meaning that it is susceptible of being misapplied in a variety of possible situations, the state court is unlikely to be able to give it an interpretation that will prevent any of these possible misapplications, so probably abstention would not enable the constitutional issue to be avoided. See 377 U.S. at 378, 84 S.Ct. at 1326. But if the question is whether the statute forbids a specific course of conduct, the task for the state court is much more limited. And it is the more limited task--of deciding whether the conduct described in Waldron's affidavit violates Indianapolis's loitering ordinance--that the state court would be asked to do in this case. Although Waldron has also attacked the ordinance on its face, we have pointed out that this case will be moot if the ordinance turns out not to be applicable to him. The question whether abstention is ever appropriate when an ordinance is challenged on its face is premature.
 
 
 22
 The judgment of the district court is vacated and the case is remanded with directions to stay further proceedings in the district court while Waldron sues the defendants in an Indiana state court to determine the applicability of the loitering ordinance to his conduct. See Van Drunen v. Village of South Holland, 550 F.Supp. 258, 261 (N.D.Ill.1982). If the state court holds the ordinance inapplicable to his conduct, his federal claim will be moot. If it holds the ordinance applicable, he can come back to the district court for an adjudication of its constitutionality, unless he prefers to have the state court decide the whole case. There will be no award of costs in this court.
 
 
 23
 VACATED AND REMANDED.
 
 
 24
 SWYGERT, Senior Circuit Judge, dissenting.
 
 
 25
 Gary Waldron and several friends had just met and were conversing in front of the Marion County Public Library in Indianapolis when they were confronted by four police officers. They were detained for an hour, and during that time were accused of being homosexuals, told "there are only faggots, thieves and police out here at this time of night," and threatened with arrest for loitering. The officers then ordered them to return to their cars and told Waldron that he would be arrested for loitering if he returned to the area at night. In light of this threat, Waldron has not associated with friends or walked at night in the downtown Indianapolis parks near the library or around the Circle.
 
 
 26
 It is now three years after the event and more than two years after Waldron filed his suit, but the majority does not address the merits of Waldron's challenge to the loitering ordinance. Instead, the majority holds that abstention is appropriate. At the same time, however, the majority acknowledges not only that Waldron has asserted a facial challenge but also that abstention is unlikely to be appropriate when a statute or ordinance is challenged on its face. I therefore believe that the majority opinion can only be read to stand for the proposition that the federal courts must abstain whenever the case involves a facial challenge to a state law on grounds of vagueness and overbreadth, unless the litigant can first produce a state court judgment that the law in question applies to the specific conduct in which the litigant has already engaged. Why this hypothetical litigant is then entitled to a federal court determination of the facial sufficiency of a law when Waldron at this time is not so entitled remains unclear. The result in this case might be understandable if Waldron presently lacked standing to assert a facial challenge, but the majority does not suggest this. It also might be understandable if the abstention doctrine focused only a litigant's attack on the statute as applied to his previous conduct, but it does not. I therefore find myself in dissent.
 
 
 27
 * Although all citizens have the right to be judged under constitutionally valid statutes and ordinances, a citizen does not have standing to challenge the constitutional sufficiency of a particular law unless he suffers direct injury by its enforcement. See, e.g., City of Los Angeles v. Lyons, --- U.S. ----, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983); Golden v. Zwickler, 394 U.S. 103, 108-110, 89 S.Ct. 956, 959-960, 22 L.Ed.2d 113 (1969). The requisite injury may derive from actual threats of future arrest rather than arrest itself. See, e.g., Ellis v. Dyson, 421 U.S. 426, 434, 95 S.Ct. 1691, 1696, 44 L.Ed.2d 274 (1975); O'Shea v. Littleton, 414 U.S. 488, 493-97, 94 S.Ct. 669, 674-76, 38 L.Ed.2d 674 (1974). Thus a citizen who claims he is being deterred from exercising his constitutional rights because of a legitimate fear of arrest under a particular statute is not required first to expose himself to prosecution before challenging that statute. See, e.g., Steffel v. Thompson, 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1979). Finally, if a litigant has met the injury requirement, he then may attack the constitutional sufficiency of the law either on its face or as applied to the facts of the specific case. See, e.g., Kolender v. Lawson, --- U.S. ----, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); Babbitt v. United Farm Workers, 442 U.S. 289, 297-305, 99 S.Ct. 2301, 2308-2312, 60 L.Ed.2d 895 (1979); Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).
 
 
 28
 In this case, there is no question that Waldron has standing to challenge the constitutionality of the Indianapolis loitering ordinance. He was detained by police acting under apparent authority of the loitering ordinance, was threatened with future arrest, and has been deterred from associating with friends or walking in certain areas of Indianapolis at night. He has sought relief in federal court based on his allegation that the ordinance violates his rights secured by the first and fourteenth amendments to the United States Constitution. More specifically, he has properly challenged the ordinance as being vague and overbroad on its face and as applied to his conduct on November 1, 1980.
 
 II
 
 29
 Even though Waldron is properly seeking federal relief from the enforcement of an ordinance he claims is facially defective, the majority, by its application of the Pullman abstention doctrine, has in essence required him first to exhaust a state remedy. See Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). I believe this result is contrary to Supreme Court decisions delineating the scope of both the Pullman doctrine and the principles of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).
 
 
 30
 The Supreme Court discussed the applicability of the Pullman abstention doctrine to cases involving claims that a statute is unconstitutionally vague and overbroad in Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). Baggett and others had attacked the facial validity of two Washington statutes requiring state employees to take oaths as conditions of employment. After determining that abstention was inappropriate, the Court held that both statutes were invalid because they were unduly vague and overbroad. Although the Court recognized that abstention may be appropriate when vagueness is at issue, it indicated that abstention is appropriate only when the unsettled issue of state law concerns the applicability of the challenged statute to a certain person or to certain defined activities. Baggett, supra, 377 U.S. at 376-77, 84 S.Ct. at 1325. Resolution of these unsettled issues, which would turn on a choice from only several alternative interpretations of the state statute, then might eliminate the constitutional questions.
 
 
 31
 In contrast, abstention is inappropriate when the plaintiffs unquestionably are subject to the statute's prohibitions and they question not just whether it permits them to engage in specific activities, but rather claim that they cannot even define the range of activities in which they might lawfully engage in the future. In such a case, where the statute is open to numerous different interpretations, it is doubtful that a state court's abstract construction of the statute in a declaratory judgment action could eliminate the vagueness of the terms in the statute. Consequently, extensive adjudications involving a variety of factual situations might be necessary to bring the statute into conformity with the Constitution, but the abstention doctrine does not require this. Baggett, supra, 377 U.S. at 378, 84 S.Ct. at 1326. Moreover, abstention is particularly inappropriate where the impact of the statute on first amendment rights is uncertain. Then not only is further constitutional adjudication unlikely to be avoided, but constitutionally-protected conduct may be deterred while the courts are resolving the issues in a piecemeal fashion. Baggett, supra, 377 U.S. at 378-79, 84 S.Ct. at 1326.
 
 
 32
 Regardless of the academic debate over the abstention doctrine, the Supreme Court has not undermined the Baggett rationale in subsequent cases. See, e.g., Babbitt v. United Farm Workers, supra, 442 U.S. at 307-08, 99 S.Ct. at 2313-14; Procunier v. Martinez, 416 U.S. 396, 401-02, 94 S.Ct. 1800, 1805-06, 40 L.Ed.2d 224 (1974); Steffel v. Thompson, supra, 415 U.S. at 474-75 nn. 21, 22, 94 S.Ct. at 1223-24 nn. 21, 22. Indeed, the Court has made plain that not every vagueness challenge to an uninterpreted statute or ordinance constitutes a proper case for abstention. In Babbitt, for example, the Court considered whether the district court should have abstained from deciding whether the criminal penalty provision of an Arizona farm labor statute was unconstitutionally vague.[1] The Court held that abstention was appropriate, but it relied on the Baggett rationale in reaching this conclusion. See Babbitt, supra, 442 U.S. at 307-08, 99 S.Ct. at 2313-14. The unsettled issue of state law in Babbitt was simply whether a person would be subject to criminal penalties for any violation of the statute or only for violations of certain sections. Because this uncertainty could be easily resolved in a single proceeding and extensive adjudication would not be required to bring the statute within the bounds of permissible constitutional certainty, abstention was appropriate.
 
 
 33
 Waldron's claim, like that of the plaintiffs in Baggett, does not merely focus on whether the law in question is constitutionally deficient as applied to specific conduct.[2] Rather, Waldron argues that the Indianapolis loitering ordinance on its face is so vague that it fails in specifying any standard of lawful conduct. There is no question that Waldron, as a resident of Indianapolis, is subject to the provisions of the ordinance. Given the threat of future arrest under this ordinance, his concern is not only that he may be arrested if he meets with friends outside the county library at night, but that he cannot apprehend what other conduct will expose him to arrest. The vagueness he claims is inherent in numerous phrases of the ordinance could not be eliminated by abstract construction of the phrases in a single declaratory judgment action, but rather would require extensive litigation involving a variety of factual situations. Abstention under the Pullman doctrine is therefore inappropriate.
 
 
 34
 Nor do the principles of Younger v. Harris, supra, support abstention in this case. Under Younger, the federal courts are generally precluded from interfering with ongoing state criminal prosecutions because of principles of judicial economy as well as concern for proper state/federal relations. Younger, supra, 401 U.S. at 43-44, 91 S.Ct. at 750. When only a threat of a statute prosecution exists, however, litigants are entitled to seek redress in a federal forum for an alleged deprivation of constitutional rights. Wooley v. Maynard, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977); Doran v. Salem Inn, Inc., 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); Steffel v. Thompson, supra, 415 U.S. at 452, 94 S.Ct. at 1212. It is not because of chance that these litigants may seek federal relief, it is because the Supreme Court in this context has refused to require exhaustion of state remedies. See, e.g., Steffel, supra, 415 U.S. at 473, 94 S.Ct. at 1222.
 
 
 35
 Since there is no pending state prosecution against Waldron, he is entitled to a federal forum. The principles of Younger do not come into play. Moreover, abstention will in effect require Waldron to exhaust a state remedy when neither Younger nor Baggett indicate that such a requirement is appropriate in this case. I therefore believe this court should have decided the merits of Waldron's constitutional challenge.
 
 III
 
 36
 Waldron asserts that the Indianapolis loitering ordinance is unduly vague and therefore violative of the due process clause of the fourteenth amendment. He also claims that the ordinance is overbroad in that it impermissibly infringes upon first amendment rights. Because I agree that the ordinance is unconstitutionally vague, I will not specifically address the overbreadth claim.
 
 
 37
 As a basic principle of due process, the void-for-vagueness doctrine reflects important societal values in the fair and nonarbitrary application of criminal laws. The doctrine requires a statute or ordinance to define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited. Otherwise, a citizen would not have fair notice of what he must do to conform his behavior to the law. Kolender v. Lawson, --- U.S. ----, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); Smith v. Goguen, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). A related concern is that vague statutes may unnecessarily inhibit the exercise of first amendment freedoms, because uncertain meanings will lead citizens to "steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." Grayned, supra, 408 U.S. at 109, 92 S.Ct. at 2299. See also Kolender v. Lawson, supra, --- U.S. at ----, 103 S.Ct. at 1859, n. 8. More importantly, a statute or ordinance must also provide explicit standards for those who will apply them so that arbitrary and discriminatory enforcement will be avoided. Without sufficient guidelines, policemen, prosecutors, and juries would be permitted to base their decisions on ad hoc and subjective considerations. Kolender, supra, --- U.S. ----, 103 S.Ct. at 1858-59; Smith, supra, 415 U.S. at 575, 94 S.Ct. at 1248; Grayned, supra, 408 U.S. at 108-09, 92 S.Ct. at 2298-99.
 
 
 38
 Because the considerations above will not apply with equal force to all situations, the degree of clarity demanded by the Constitution depends in part on the nature of the enactment. Village of Hoffman Estates v. Flipside Hoffman Estates, Inc., 455 U.S. 489, 498-99, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). If the enactment controls individual behavior, imposes criminal sanctions, and threatens to inhibit the exercise of constitutionally-protected rights, greater definiteness is required. See id. The law then may be held unconstitutionally vague on its face even if it is not vague in all of its possible applications. Kolender, supra, --- U.S. at ----, 103 S.Ct. at 1859 n. 8.
 
 
 39
 Waldron's challenge to the Indianapolis loitering ordinance should be judged under a stringent standard. The ordinance is directed toward individual behavior rather than business conduct. It imposes the ultimate sanction of a fine, but also subjects those who violate its terms to arrest and the concomitants of lawful search and police records. Of even greater importance is the ordinance's effect on the fundamental rights of freedom of speech, assembly, and movement. See, e.g., Kolender, supra, --- U.S. at ----, 103 S.Ct. at 1859-60; Hoffman Estates, supra, 455 U.S. at 499, 102 S.Ct. at 1193; Papachristou, supra, 405 U.S. at 162-64, 92 S.Ct. at 843-44.
 
 
 40
 In many of its applications, the Indianapolis loitering ordinance fails to meet the constitutional requirement of definiteness. Read as a whole, the ordinance contains no standard for determining what conduct is prohibited. See Coates v. Cincinnati, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971). It vests almost complete discretion in police officers to determine whether an individual has violated its terms. See Kolender, supra, --- U.S. ----, 103 S.Ct. at 1859-60. Although the ordinance was based on the Model Penal Code formulation,[3] it departs from the model statute to the point of meaninglessness.[4] The four additional clauses of the Indianapolis ordinance that supposedly modify the general proscription against loitering contained in clause (a) do not clarify its meaning; they completely obfuscate it.
 
 
 41
 Loitering under clause (a) of the Indianapolis ordinance is prohibited, for example, if it "would create or cause to be created ... danger of a breach of the peace." The Indiana courts have construed the phrase "breach of peace," see Census Federal Credit Union v. Wann, 403 N.E.2d 348, 350-51 (Ind.App.1980), but I fail to see how this interpretation clarifies what conduct would "cause to be created [a] danger of a breach of the peace." Similarly, the ordinance prohibits loitering if it "would create or cause to be created ... the unreasonable danger of a disturbance to the comfort and repose of any person." The Supreme Court has held, however, that proscribing behavior which "annoys" others violates due process, see Coates, supra, and the Indianapolis ordinance proscribes almost identical conduct.
 
 
 42
 The general proscription of clause (a) is not itself devoid of ambiguities and circularities. When or in what manner do law-abiding citizens loiter or prowl? How can one know whether he has a lawful reason for remaining in the street when it is unclear what the ordinance makes unlawful? Moreover, clause (d) of the ordinance creates additional problems of arbitrary enforcement and conviction. Under one interpretation, this clause permits conviction if a person's explanation for his conduct was not believed by the police officers. Such a delegation of decisionmaking authority based not on an objective standard but instead on subjective impressions opens the door to arbitrary arrests and convictions. See Kolender, supra.
 
 
 43
 The real potential for arbitrary and discriminatory enforcement of the Indianapolis loitering ordinance is amply illustrated by the threat of arrest made to Gary Waldron and his friends. The indefiniteness of the ordinance provides insufficient guidelines for those who must enforce it and no standard of conduct for those who are subject to it. This uncertainty may also deter the exercise of basic constitutional freedoms. For all the reasons stated above, I therefore believe that clauses (a) and (d) of the Indianapolis Loitering Ordinance are void for vagueness.
 
 
 
 [1]
 The Court also considered whether the district court should have abstained with respect to the plaintiffs' first amendment challenges to the election procedures provision and the consumer publicity provision of the statute. The Court held that abstention was appropriate on the issue of the constitutionality of the consumer publicity provision, but was inappropriate regarding the election provision because a state court construction of the latter provision would not obviate the need for deciding the constitutional issue or materially alter the question to be decided. Babbitt, supra, 442 U.S. at 305-06, 308-12, 99 S.Ct. at 2312, 2314-16
 
 
 [2]
 In Baggett, the plaintiffs contended that the Washington statutes were facially invalid without challenging the statute as applied. The Court decided abstention was inappropriate without examining, or even mentioning, what specific conduct the plaintiffs had previously engaged in or intended to pursue in the future
 
 
 [3]
 The Model Penal Code of the American Law Institute, Sec. 250.6 (1980), provides as follows:
 Loitering or Prowling.
 A person commits a violation if he loiters or prowls in a place, at a time, or in a manner not usual for law-abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity. Among the circumstances which may be considered in determining whether such alarm is warranted is the fact that the actor takes flight upon appearance of a peace officer, refuses to identify himself, or manifestly endeavors to conceal himself or any object. Unless flight by the actor or other circumstance makes it impracticable, a peace officer shall prior to any arrest for an offense under this section afford the actor an opportunity to dispel any alarm which would otherwise be warranted, by requesting him to identify himself and explain his presence and conduct. No person shall be convicted of an offense under this Section if the peace officer did not comply with the preceding sentence, or if it appears at trial that the explanation given by the actor was true and, if believed by the peace officer at the time, would have dispelled the alarm.
 
 
 [4]
 The loitering ordinance, section 20-9(a) of the Code of Indianapolis and Marion County provides as follows:
 (a) LOITERING. No person shall loiter or prowl in a place, at a time or in a manner not usual for law abiding citizens, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity, in any public way, street, highway, place, or alley and refuse to obey the lawful command of a police officer to move on or provide to said police officer a lawful reason for remaining on said public way, street, highway, place or alley if the alleged loitering by said person would create or cause to be created any of the following:
 (1) Danger of a breach of the peace;
 (2) The unreasonable danger of a disturbance to the comfort and repose of any person acting lawfully on or in a public way, street, highway, place, or alley reserved for pedestrians;
 (3) The obstruction or attempted obstruction of the free normal flow of vehicular traffic or the normal passage of pedestrian traffic upon any public way, street, highway, place, or alley;
 (4) The obstruction, molestation or interference or attempt to obstruct, molest or interfere with any person lawfully on or in a public way, street, highway, place, or alley to fear for his or her safety.
 * * *
 (c) No persons shall be convicted under this section if the police officer failed to comply with the procedure outlined herein.
 (d) No person shall be convicted under this section if it appears at trial that the explanation given by the person is true and, if believed by the police would:
 (1) have dispelled the fear for human safety;
 (2) have dispelled the concern for safety of property;
 (3) have dispelled the fear of a breach of the peace;
 (4) have provided a justifiable reason for obstructing vehicular or pedestrian traffic, subject to the discretion of the court. *1360.
 (e) If a person takes flight upon appearance of a police officer, who identifies himself as such, or refuses to identify himself, or attempts to conceal himself, said police officer has probable cause to believe a violation of this section has occurred and is hereby duly authorized to make an arrest.
 (f) Any person, firm or corporation who violates the provisions of the section and is found guilty for said violation shall be fined not less than twenty-five dollars ($25.00) or more than five hundred dollars ($500.00) for each offense and a separate offense shall be deemed committed on each day during which a violation occurs or continues.
 (g) The provisions of this section shall not apply to solicitation for any lawful business or any lawful charity licensed by the Charities Solicitation Commission of the City.