Richard NAGOL, Plaintiff,

v.

STATE OF NEW MEXICO, Edward Apodaca, New Mexico Department of Public Safety, Defendants.

Civ. No. 94–1281 BB/WWD.

United States District Court,
D. New Mexico.

March 12, 1996.

Richard Nagol, Deming, NM, pro se.

Thomas A. Sandenaw, Jr., Leonard J. Piazza, Las Cruces, NM, for Defendants.

### MEMORANDUM OPINION

BLACK, District Judge.

This Memorandum Opinion addresses several pending motions. Having reviewed the submissions of the parties, and having considered the applicable law, the Court finds that

(1) Defendants' January 26, 1995 motion to dismiss for failure to state a claim upon which relief can be granted (Doc. 6) is well taken and should be **GRANTED,** and

(2) Plaintiff's August 13, 1995 motion for summary judgment (Doc. 32), Defendants' September 5, 1995 motion to strike portions of affidavit of Richard Albright (Doc. 34), and Plaintiff's January 24, 1996 motion for order to go forward with case (Doc. 44) should be **DENIED AS MOOT.**

## I. Factual Background and Procedural History

The facts giving rise to this case occurred on May 26, 1992 when New Mexico State Police Officer Edward Apodaca pulled over an automobile that he had clocked as traveling sixty-five miles per hour in a fifty-five miles per hour speed limit zone. Plaintiff, Richard Nagol, was a passenger in the car driven which was driven by Richard Albright. After stopping the vehicle, Officer Apodaca approached the vehicle and asked Mr. Albright for his driver's licence, which Mr. Albright handed to Officer Apodaca. At this point, Officer Apodaca noticed that Plaintiff was not wearing a seat belt and asked see Plaintiff's driver's license. Plaintiff told Officer Apodaca that his name was "Nagol" but refused to provide Officer Apodaca with any further identification. Officer Apodaca informed Plaintiff that he intended to cite Plaintiff for not wearing a seatbelt, and that he needed Plaintiff's full name, date of birth, and address to complete the citation. Plaintiff continued to refuse to provide Officer Apodaca with further identification. Officer Apodaca then arrested Plaintiff for failure to provide identification pursuant to N.M.Stat.Ann. § 30–22–3 (Michie Supp.1994).

Plaintiff, acting *pro se,* brought suit under 42 U.S.C. § 1983 (1994) against the State of New Mexico, Edward Apodaca, and the New Mexico Department of Public Safety. He claims that Officer Apodaca's conduct violated his rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and seeks compensatory and punitive damages arising from these alleged violations. Plaintiff further challenges the constitutionality of N.M.Stat.Ann. § 30–22–3, claiming that the law violates the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and Article II, §§ 10, 15, 17, & 18 of the New Mexico Constitution. Finally, Plaintiff asks this Court to enjoin the State of New Mexico from making any future arrests under section 30–22–3. Defendants have collectively filed a motion to dismiss Plaintiff's case for failure to state a claim upon which relief can be granted, and this motion is now before the Court.[1]

---

1. Although Defendants characterize their motion as a motion to dismiss for failure to state a claim upon which relief can be granted, they have attached an affidavit to their motion and ask the Court to treat the motion as a motion for summary judgment. Such a request is not properly submitted and, as a result, the Court will only consider the motion as a motion to dismiss for failure to state a claim upon which relief can be granted.

Furthermore, without leave of the Court, Defendants have filed a supplemental memorandum to their motion to dismiss. The Defendants submitted this supplement approximately six months

## II. Analysis

### A. Plaintiff's Claims Pursuant to 42 U.S.C. § 1983

■ Officer Apodaca argues that he is entitled to qualified immunity and therefore shielded from liability under Plaintiff's § 1983 claim. "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The qualified immunity standard "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). The Tenth Circuit has stated that

> Once a defendant pleads qualified immunity, the plaintiff initially bears a heavy two-part burden. First, the plaintiff must demonstrate that the defendant's actions violated a constitutional right or statutory right. Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue. [P]laintiff must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity.

*Albright v. Rodriguez,* 51 F.3d 1531, 1534 (10th Cir.1995) (citations omitted). Qualified immunity is a legal rather than a factual issue which must be resolved by the trial court. *Snell v. Tunnell,* 920 F.2d 673, 696 (10th Cir.1990). The Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991).

Plaintiff argues that Officer Apodaca had no authority to question him because at the time Officer Apodaca observed that Plaintiff was not wearing a seatbelt, Plaintiff was sitting in a parked car. Plaintiff asserts that sitting in a parked car while not wearing a seatbelt is lawful and that, as a result, Officer Apodaca had no "reasonable articulable suspicion" that a crime was being committed that would allow him to demand identification from Plaintiff. Plaintiff, however, also states that section 30–22–3 provided Officer Apodaca the power to arrest Plaintiff. Thus, Plaintiff does not claim that he was improperly arrested under section 30–22–3. Instead, Plaintiff seems to found his § 1983 claim upon his argument that "[t]he state of New Mexico needs to change this statute and any *reasonable officer should have known this.*" (Pl.Resp. to Defs.' Mot. to Dismiss at 2 (emphasis in original)).

It stretches the imagination to see how a police officer who applies a presumably valid law in a valid fashion could be said to have "violated a person's clearly established constitutional right" of which "any reasonable official would have known." The duty of a police officer is to enforce the laws passed by the legislature, not to question the validity of these laws. A police officer cannot be held liable under § 1983 for properly enforcing the laws the officer is sworn to uphold.

Furthermore, even if section 30–22–3 did not authorize Officer Apodaca to arrest Plaintiff in the circumstances given, "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 343, 341, 106 S.Ct. 1092, 1097, 1096, 89 L.Ed.2d 271 (1986)). Officer Apodaca arrested Plaintiff for concealing his identity after Plaintiff admittedly refused to fully identify himself to Officer Apodaca, who was in the course of lawful traffic stop. Plaintiff has not, and cannot, show that Officer Apodaca violated a well established constitutional right of which a reasonable official would have known when he arrested Plaintiff.

after the filing date of their motion to dismiss. Such action does not comply with the Local Civil Rules of the United States District Court for the District of New Mexico and the supplemental memorandum will not be considered by the Court. *See* D.N.M.LR–Civ. 7.6.

The Tenth Circuit's recent decision in *Albright v. Rodriguez,* 51 F.3d 1531 (10th Cir. 1995), forecloses the possibility that Plaintiff could recover in this case on the basis of alleged First and Fourth Amendment violations. In *Albright,* police arrested a man under N.M.Stat.Ann. § 30–22–3 after the man refused to identify himself in the context of a lawful investigative stop. *Albright,* 51 F.3d at 1532–33. The man subsequently filed a § 1983 action, alleging that the police had no probable cause to arrest him and that his arrest for concealing his identity violated his Fourth Amendment right to be free from unlawful searches and seizures and his first Amendment right "not to speak." *Id.* at 1534. The Tenth Circuit first held that given the lack of certainty as to whether an officer may constitutionally arrest an individual for the individual's refusal to identify himself in the context of a lawful investigative stop, the plaintiff could not demonstrate "that it would have been apparent to a reasonable officer in March 1992 that arresting Plaintiff for concealing his identity in the context of a lawful investigative stop violated the Fourth Amendment." *Id.* at 1538. In the case at bar Plaintiff does not contest that he was questioned during the course of a lawful investigative stop. Under *Albright,* the Fourth Amendment is not a peg upon which Plaintiff can rest his § 1983 action.

Similarly, with regard to the First Amendment, the *Albright* court determined that "under existing First Amendment law a reasonable officer would not know that he violates the First Amendment by arresting a person who refuses to identify himself during a lawful investigative stop." *Id.* at 1539. Thus, *Albright* definitively precludes Plaintiff from recovering under either his First or Fourth Amendment claims.

Furthermore, the Tenth Circuit decision in *Pallottino v. City of Rio Rancho,* 31 F.3d 1023 (10th Cir.1994), precludes Plaintiff from recovering on the basis of his Fifth Amendment claim. The Tenth Circuit in *Pallottino* dismissed a § 1983 action brought by an individual who argued that the police arrested him, at least in part, in retaliation for his refusal to give the officer his address. *Id.* at 1025. The court held that "there is no clear-ly established right, under the Fifth Amendment, to ignore police requests at the scene of an investigation for a witness's name and address." *Id.* at 1026. *Pallottino* dictates that Plaintiff's claim under the Fifth Amendment must fail.

Finally, Plaintiff presents no argument as to how Officer Apodaca's conduct violates a clearly established right under the Fourteenth Amendment. A *pro se* plaintiff is held to less stringent pleading standards than are attorneys, and a "constitutional claim under § 1983 should not be dismissed unless it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." *Dunn v. White,* 880 F.2d 1188, 1190 (10th Cir.1989) (quoting *Meade v. Grubbs,* 841 F.2d 1512, 1526 (10th Cir.1988)). Nonetheless, when a *pro se* plaintiff presents nothing more than conclusory allegations of a constitutional violation, his claim may properly be dismissed. *Id.* at 1197; *see also Davis v. Scherer,* 468 U.S. 183, 197, 104 S.Ct. 3012, 3020–21, 82 L.Ed.2d 139 (1984) ("[P]laintiff must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity."). Because Plaintiff has not specifically described which Fourteenth Amendment rights have allegedly been violated, or how his Fourteenth Amendment rights were allegedly violated, his claim under the Fourteenth Amendment cannot succeed.

Plaintiff's claims against the State of New Mexico and the New Mexico Department of Public Safety are also without merit. First, claims against the State of New Mexico and the Department of Public Safety cannot exist in the absence of an underlying claim against Officer Apodaca. *Apodaca v. Rio Arriba County Sheriff's Dep't,* 905 F.2d 1445, 1447 (10th Cir.1990). Second, even if a claim did exist against Officer Apodaca, § 1983 claims against the State of New Mexico and against the New Mexico Department of Public Safety are barred by the Eleventh Amendment. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 68–71, 109 S.Ct. 2304, 2310–12, 105 L.Ed.2d 45 (1989); *Watson v. Univ. of Utah Medical Ctr.,* 75 F.3d 569 (10th Cir.1996). As a result, Plaintiff's

§ 1983 claim will be dismissed against Officer Apodaca, the State of New Mexico, and the New Mexico Department of Public Safety.

## B. Claims Addressed to Constitutionality of N.M.Stat.Ann. § 30–22–3

Before a court can address the merits of a constitutional challenge to a criminal statute, the challenger of the statute must clearly demonstrate the existence of "a continuing, actual controversy, as mandated by the Declaratory Judgment Act, 28 U.S.C. § 2201, and by Art. III of the Constitution itself." *Ellis v. Dyson,* 421 U.S. 426, 433, 95 S.Ct. 1691, 1695, 44 L.Ed.2d 274 (1975); *see also Steffel v. Thompson,* 415 U.S. 452, 459–473, 94 S.Ct. 1209, 1215–23, 39 L.Ed.2d 505 (1974). To establish a present case or controversy in federal court, a plaintiff must establish a genuine and credible threat that the plaintiff will suffer from future prosecution under the statute. *Ellis,* 421 U.S. at 434, 95 S.Ct. at 1696; *Wooley v. Maynard,* 430 U.S. 705, 711, 97 S.Ct. 1428, 1433, 51 L.Ed.2d 752 (1977); *City of Los Angeles v. Lyons,* 461 U.S. 95, 104–07, 103 S.Ct. 1660, 1666–68, 75 L.Ed.2d 675 (1983). When a plaintiff contests the constitutionality of a criminal statute the plaintiff does not have to "first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights." *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2309, 60 L.Ed.2d 895 (1979) (quoting *Steffel,* 415 U.S. at 459, 94 S.Ct. at 1216). However, "persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." *Babbitt,* 442 U.S. at 299, 99 S.Ct. at 2309 (quoting *Younger v. Harris,* 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971)).

In *Lyons,* the Supreme Court set forth a case or controversy standard which is useful in adjudicating the case at bar. The plaintiff in *Lyons,* Adolph Lyons, sought to enjoin

Los Angeles police officers from using "chokeholds." *Lyons,* 461 U.S. at 97–98, 103 S.Ct. at 1662–63. Mr. Lyons alleged that four Los Angeles police officers pulled him over for a traffic violation and then proceeded to render him unconscious through application of a "chokehold," a technique in which the city allegedly trained the officers. *Id.* Mr. Lyons alleged that the police officers applied the chokehold even though plaintiff neither threatened nor resisted the officers. *Id.*

The *Lyons* Court determined that the case presented no current case or controversy, stating that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects."[2] *Id.* at 102, 103 S.Ct. at 1665 (citations omitted). The Court acknowledged that there would be "certain instances in which strangleholds will be illegally applied [by police within Los Angeles] and injury and death unconstitutionally inflicted upon the victim." *Id.* at 108, 103 S.Ct. at 1668. Even so, the Court held that "it is no more than speculation to assert ... that Lyons himself will again be involved in one of those unfortunate instances." *Id.* Thus, the Court concluded, "Lyons' assertion that he may again be subject to an illegal chokehold does not create the actual controversy that must exist for a declaratory judgment to be entered." *Id.* at 104, 103 S.Ct. at 1666. Furthermore, the Court determined that "the capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." *Id.* at 109, 103 S.Ct. at 1669.

Plaintiff's claim in the present case, like the claim in *Lyons,* is not ripe. Plaintiff has failed to credibly establish a sufficient likelihood that he will again be arrested under N.M.Stat.Ann. § 30–22–3. Furthermore, the existence of N.M.Stat.Ann. § 30–22–3

---

**2.** In his original complaint, Mr. Lyons brought a claim for both injunctive and declaratory relief. *Lyons,* 461 U.S. at 98–100, 103 S.Ct. at 1663–64. By the time the case reached the Supreme Court, however, Mr. Lyons had dropped the claim for declaratory relief. *Id.* While claims for declaratory relief are distinct from claims for injunctive relief, the differences between the two claims are not critical to the case presently before the Court.

neither subjects Plaintiff to criminal penalty nor inhibits Plaintiff from engaging in any lawful conduct in which Plaintiff wishes to engage.

Plaintiff alleges that he was wrongfully arrested under section 30–22–3 for refusing to identify himself after Officer Apodaca informed him that identification was needed in order to issue a seatbelt violation citation. Plaintiff's contention appears to be that Officer Apodaca had no grounds to order Plaintiff to produce identification at the time Officer Apodaca requested the identification. Plaintiff also states, however, that he was not convicted under section 30–22–3 and that "ALL COURT ACTION WAS FINALIZED IN FAVOR OF THE ACCUSED." (Pl. Resp. to Defs.' Mot. to Dismiss, at 2 (emphasis in original)). If, as Plaintiff asserts, the court ultimately determined that Plaintiff could not be convicted under section 30–22–3 for his conduct, Plaintiff should have no fear that the statute will harm him in the future. When a court holds a statute inapplicable to conduct for which a plaintiff was arrested, and in which plaintiff wants to engage in the future, the plaintiff cannot challenge the state statute on its face or as applied. *Waldron v. McAtee*, 723 F.2d 1348, 1353 (7th Cir.1983).

If, on the other hand, the court convicted Plaintiff for violating section 30–22–3, a constitutional challenge to section 30–22–3 would properly lie in state rather than federal court. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Wooley*, 430 U.S. at 712, 97 S.Ct. at 1434. As stated by the Fourth Circuit, "[s]ince at least *Fenner v. Boykin*, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926), there has been no question that the usual place to test the validity of state criminal laws is in a state prosecution." *Doe v. Duling*, 782 F.2d 1202, 1208 (1986). Thus, whether Plaintiff was ultimately convicted under section 30–22–3 or not, he cannot now challenge the statute in federal court.

This result does not mean that federal courts are completely closed to individuals who wish to challenge state criminal statutes. In cases where no state proceeding has been initiated, federal courts will hear a plaintiff's constitutional challenge to a state criminal statute when

refusal on the part of the federal courts to intervene ... place[s] the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding.

*Steffel*, 415 U.S. at 462, 94 S.Ct. at 1217; *Wooley*, 430 U.S. at 710, 97 S.Ct. at 1433. In *Wooley*, for instance, the Supreme Court heard a constitutional challenge to a New Hampshire law that made it criminal for a person to obscure the motto "Live Free or Die" on New Hampshire license plates. *Id* at 706–07, 97 S.Ct. at 1431–32. The plaintiff in *Wooley*, however, George Maynard, had undergone three successive prosecutions in a span of five weeks as a result of covering the motto on the license plate of his vehicle. *Wooley*, 430 U.S. at 710–12, 97 S.Ct. at 1432–34. Similarly, in *Kolender v. Lawson*, 461 U.S. 352, 353, 103 S.Ct. 1855, 1856, 75 L.Ed.2d 903 (1983), the Court allowed plaintiff, Edward Lawson, to challenge a California statute which required persons who loiter and wander on the streets to provide "credible and reliable" identification when requested by a peace officer under circumstances that would justify a stop under the standards of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Mr. Lawson, however, had been detained or arrested pursuant to the statute on approximately fifteen occasions in a period of less than two years. *Id.* at 354, 103 S.Ct. at 1856.

Unlike the plaintiffs in *Wooley* and *Kolender*, Plaintiff in the present case does not show that he will likely be prosecuted under the statute in the future should he engage in conduct that he argues is constitutionally protected. In *Wooley*, Mr. Maynard had a constitutional right not to display the motto "Live Free or Die," and had Mr. Maynard continued to exercise this right, he would have most likely continued to be prosecuted under the laws of New Hampshire. *Wooley*, 430 U.S. at 710–12, 717, 97 S.Ct. at 1432–34, 1436–37. Similarly, in *Kolender*, a "credible threat" existed that Mr. Lawson would be detained again under a statute which was

arguably unconstitutional.[3] *Kolender*, 461 U.S. at 355 n. 3, 103 S.Ct. at 1857 n. 3. In the present case, Plaintiff does not indicate that he has been asked to produce identification pursuant to N.M.Stat.Ann. § 30–22–3 at any time other than on May 26, 1992. Furthermore, Plaintiff neither establishes nor alleges facts or circumstances to indicate that he may again be asked to produce identification pursuant to section 30–22–3. As a result, Plaintiff has not shown a credible threat that he may be arrested under section 30–22–3 in the future. Absent this showing Plaintiff cannot challenge the validity of section 30–22–3 in federal court.

For the above stated reasons, **Defendants' Motion to Dismiss** will be **GRANTED.** **Plaintiff's Motion for Summary Judgment, Defendants' Motion to Strike Portions of Affidavit of Richard Albright,** and **Plaintiff's Motion for Order to Go Forward with Case** will be **DENIED AS MOOT.**

An Order will issue in accordance with this Memorandum Opinion.

---

**3.** The Court in *Kolender* ultimately determined that the statute in question was unconstitutionally vague. Although N.M.Stat.Ann. § 30–22–3 arguably contains some of the same problems at issue in *Kolender,* this Court expresses no opinion regarding the constitutionality of N.M.Stat. Ann. § 30–22–3. Furthermore, the Court notes that to conserve judicial resources and to avoid "needless collision between state and federal power," the state court should be given first opportunity to interpret N.M.Stat.Ann. § 30–22–3 and to determine its constitutionality. *Waldron,* 723 F.2d at 1352.