**Charles W. ZIEGLER, III,**
**Plaintiff–Appellant,**

v.

**Deborah Carroll ZIEGLER et al.,**
**Defendants–Appellees.**

**No. 80–3187**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.
Unit A

Dec. 10, 1980.

---

George M. Strickler, Jr., Ann Woolhandler, Michael G. Collins, New Orleans, La., for plaintiff–appellant.

Herman & Herman, Maury A. Herman, New Orleans, La., for Deborah Ziegler.

Louis M. Jones, Asst. Atty. Gen., State of Louisiana, New Orleans, La., for Judges S. Sanford Levy and Henry J. Roberts.

Before CHARLES CLARK, REAVLEY and WILLIAMS, Circuit Judges.

PER CURIAM:

On January 10, 1978, defendant Deborah Ziegler filed suit against her husband Charles W. Ziegler, III in Louisiana state court seeking a divorce and a partition of property belonging to the community. Shortly thereafter, the husband brought this action in district court seeking declaratory and injunctive relief on the ground that Louisiana's "double declaration" doctrine violates the equal protection guarantees of the fourteenth amendment. The double declaration doctrine is a judicially created rule establishing a conclusive presumption that property purchased by a husband during the existence of the marriage is property of the community unless he makes a written declaration at the time of purchase that the property is for his separate estate and is purchased out of his separate funds. On the other hand, a wife who fails to make a contemporaneous declaration of purchase for her separate estate may later rebut the presumption that property purchased during the marriage belongs to the community. *See Smith v. Smith*, 230 La. 509, 89 So.2d 55 (1956). Mr. Ziegler has purchased property during the marriage without making the required declarations, property which he claims should be regarded as a portion of his separate estate and not as a part of the community acquets and gains. Accordingly, he brought this action for a declaration holding unconstitutional the rule that prevents him from rebutting the presumption of community and for an injunction to prevent the state court from applying that rule in his property partition proceedings.

After the divorce proceedings were initiated, however, the Louisiana Legislature adopted Civil Code Article 2340. This Article abrogates the former double declaration doctrine and permits both the husband and wife to overcome the presumption that property purchased during the existence of the marriage is property of the community. It provides:

Things in the possession of a spouse during the existence of a regime of community acquets and gains are presumed to be community, but either spouse may prove that they are separate.

La.Civ.Code Art. 2340. The effective date of the legislation is January 1, 1980, almost two years after Mrs. Ziegler brought this divorce action against her husband. Those divorce proceedings have now been concluded, but no partition of the Zieglers' community property has yet been made.

Mrs. Ziegler filed a motion to dismiss her husband's federal action, with prejudice, on the grounds that it failed to present a justiciable controversy and that injunctive relief would violate the Anti–Injunction Act, 28 U.S.C. § 2283 and be inconsistent with the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny. The district court granted the motion, and Mr. Ziegler appeals.

The district court correctly observed that there has been no state court pronouncement on the scope of Louisiana Civil Code Article 2340. Conceivably, the Article could be construed to apply only to property acquired after its January 1, 1980 effective date. On the other hand, there is scholarly opinion suggesting that the double declaration doctrine is merely a rule of evidence, so that Article 2340 is also evidentiary and could be applied at the time of partition without regard to the time the property was purchased. *See* Samuel, *The Retroactivity Provisions of Louisiana's Equal Management Law: Interpretation and Constitutionality*, 39 La.L.Rev. 347, 398 (1979). Even if evidentiary, however, the new Article could be held ap-

plicable only in those partition proceedings initiated after the January 1, 1980 effective date. In light of the uncertain scope to be accorded Article 2340, Mrs. Ziegler contends that it would be entirely conjectural to anticipate that any of her husband's constitutional rights would be denied and that any opinion by a federal court would be patently advisory. Therefore, she maintains that this case poses a non—justiciable controversy and that the district court properly dismissed it.

We disagree. The basic test for determining whether a litigant alleges a case or controversy is whether the conflicting contentions of the parties present a real and substantial controversy between persons having adverse legal interests, a dispute that is definite and concrete. *See Poe v. Ullman,* 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961); *International Longshoremen's Union v. Boyd,* 347 U.S. 222, 74 S.Ct. 447, 98 L.Ed. 650 (1954); *United Public Workers v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). "A hypothetical threat is not enough." *United Public Workers v. Mitchell,* 330 U.S. at 90, 67 S.Ct. at 564, 91 L.Ed. at 766. Therefore, a plaintiff who challenges a state practice must demonstrate a realistic danger of sustaining a direct injury from its application. *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674, 682 (1974). However, "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Pennsylvania v. West Virginia,* 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117, 1129 (1923). *See Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979); *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). This controversy is concrete enough to focus attention on the narrow issue involved and to avoid overstatement. The application of Louisiana's double declaration rule in the Zieglers' partition proceedings is not an unrealistic possibility, and the effect of that application is not wholly imaginary or speculative. The positions of the parties are sufficiently

adverse and the dispute between them sufficiently concrete to present a case or controversy within the jurisdiction of the district court.

■ Nevertheless, the district court correctly perceived that the posture of this case makes it unsuitable for resolution by a federal court at the present time. If the Louisiana court determines that the partitioning of the Zieglers' community property should be governed by Article 2340, then Mr. Ziegler's equal protection attack on the double declaration rule will be unnecessary. Immediate resolution of Mr. Ziegler's constitutional claim would therefore be premature. However, where resolution of a potentially dispositive state issue will obviate the need for deciding a federal constitutional issue, the proper course is for the federal court to abstain, not to dismiss.

■ This case, therefore, fits the paradigm for application of the abstention doctrine developed in *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Where a state statute, not yet construed by the state courts, is susceptible of one construction that would leave it free of constitutional infirmity and of another construction that might not, then the district court should stay its hand in favor of a state court determination of the statute's meaning. The federal court should not place itself in the position of holding the statute unconstitutional by giving it the latter construction only to discover that the state courts would give it the former. *See, e. g., Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979); *Elkins v. Moreno,* 435 U.S. 647, 98 S.Ct. 1338, 55 L.Ed.2d 614 (1978); *Boehning v. Indiana State Employees Ass'n,* 423 U.S. 6, 96 S.Ct. 168, 46 L.Ed.2d 148 (1975); *Bellotti v. Baird,* 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976). Abstention "does not, of course, involve the abdication of federal jurisdiction, but only the postponement of its exercise...." *Harrison v. NAACP,* 360 U.S. 167, 177, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152, 1158 (1959).

Abstention is predicated on the policies of avoiding unnecessary constitutional decisions and of promoting harmonious federal–state relations. These policies are especially cogent in this case. The construction placed on Article 2340 by the Louisiana courts could eliminate the need to render a constitutional decision in the sometimes unpredictable area of benign, gender-based discrimination. Moreover, domestic relations law is a subject peculiarly within the province of the states, and abstention could have the salutary effect of making intrusion by the federal judiciary into this sensitive area of state concern altogether unnecessary.

An additional factor tips the balance even further in favor of ordering abstention in this case. The classic *Pullman*–type abstention order requires the parties to commence an action in state court for a declaratory judgment on the state law issues. The delay occasioned by the abstention decision has sometimes been an important factor militating against it. *See, e. g., Baggett v. Bullitt*, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). *See generally*, Field, Abstention in Constitutional Cases: The Scope of the Pullman Abstention Doctrine, 122 U.Pa.L.Rev. 1071, 1129–1134 (1974). But where, as here, there is already pending a state action that is likely to resolve the state question without the commencement of new proceedings in state court, the argument in favor of abstention is even more compelling. *See, e. g., Askew v. Hargrave*, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971); *Albertson v. Millard*, 345 U.S. 242, 73 S.Ct. 600, 97 L.Ed. 983 (1953); *City of Chicago v. Fieldcrest Dairies, Inc.*, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355 (1942); *Cornwell v. Ferguson*, 545 F.2d 1022 (5th Cir. 1977).

Accordingly, the district court should have abstained. As the Supreme Court has stated, "Ordinarily the proper course in ordering '*Pullman* abstention' is to remand with instructions to retain jurisdiction but to stay the federal suit pending determination of the state–law questions in the state court." *Harris County Commissioners Court v. Moore*, 420 U.S. 77, 88 n. 14, 95 S.Ct. 870, 878 n. 14, 43 L.Ed.2d 32, 42 n. 14 (1975). If the Louisiana courts subsequently determine that Article 2340 applies to the Zieglers' partitioning, then the equal protection challenge will be mooted and the district court can dissolve the stay. If the state courts decide that the double declaration doctrine governs the Zieglers' case, then Mr. Ziegler will have the right to return to district court and pursue his constitutional claim in accordance with *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). Therefore, we vacate the district court's dismissal of the action and remand with directions to stay the case pending the outcome of proceedings in the Louisiana state courts.

Because of our disposition of the case, we find it unnecessary to reach Mrs. Ziegler's arguments founded on 28 U.S.C. § 2283 and the *Younger* doctrine. We deny Mr. Ziegler's motion for the assessment of attorneys' fees pursuant to 42 U.S.C. § 1988. Whether he ultimately becomes the prevailing party is a matter which must await further developments. The costs of this appeal will be assessed against appellee.

VACATED AND REMANDED WITH DIRECTIONS.