WESTERN BUSINESS SYSTEMS, INC. et al., Plaintiffs,

v.

Lewis SLATON et al., Defendants.

Civ. A. No. 80-1093.

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 30, 1980.

Arthur M. Schwartz, Denver, Colo., Mike Aranson, Dallas, Tex., Robert Eugene Smith, Encino, Cal., Glenn Zell, Charles W. Boyle, Anja M. Smith, Atlanta, Ga., for plaintiffs.

H. Allen Moye, George M. Weaver, Leonard W. Rhodes, Atlanta, Ga., for Slaton.

Daryl A. Robinson, Atlanta, Ga., for Arthur K. Bolton.

Ferrin Y. Mathews, W. Roy Mays, Atlanta, Ga., for George Naper.

ORDER

ROBERT H. HALL, District Judge.

Presently before the court in this constitutional attack on the Georgia "RICO" statute[1] are motions to dismiss by all three defendants. One ground of each motion urges that plaintiffs have failed to invoke the jurisdiction of the court, because they have presented no actual 'case or controversy as required by Article III. The court agrees, and the complaint will be dismissed on this ground.

In this court's order dated July 17, 1980, following the July 15 preliminary injunction hearing, the court expressly reserved ruling on the question of plaintiff's standing to bring this suit. No evidence was taken at that hearing, nor has evidence otherwise been introduced.

In the complaint, plaintiffs sought declaratory and injunctive relief under 42 U.S.C. § 1983; 28 U.S.C. § 1343(3); and the Declaratory Judgment Act, 28 U.S.C. § 2201. We turn now to questions of standing.

In *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), the Supreme Court in determining whether petitioner had presented an actual controversy as required by Article III, wrote that he must allege threats of prosecution which were not imaginary, speculative, or chimerical, though it was not necessary that he expose himself to actual arrest or prosecution to gain standing. The Court found

---

1. "Racketeer Influenced and Corrupt Organizations Act," Ga.Code § 26-3401 *et seq.*

that Steffel had standing, because "[h]e has been twice warned to stop hand billing that he claims is constitutionally protected and has been told by police that if he again hand bills at the shopping center and disobeys a warning to stop he will likely be prosecuted." 415 U.S. at 459, 94 S.Ct. at 1215.

In contrast to Steffel's genuine predicament, three of the appellees in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), were held to have no standing. For purposes of the instant motion, it is useful to consider this section of the *Younger* opinion: "Whatever right Harris, who is being prosecuted under the state syndicalism law may have, Dan, Hirsch, and Broslawsky cannot share it with him. If these three had alleged that they would be prosecuted for the conduct they planned to engage in, and if the District Court had found this allegation to be true–either on the admission of the State's district attorney or on any other evidence–then a genuine controversy might be said to exist. But here, appellees Dan, Hirsch, and Broslawsky do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible. They claim the right to bring this suit solely because, in the language of their complaint, they 'feel inhibited.' We do not think this allegation, even if true, is sufficient to bring the equitable jurisdiction of the federal courts into play to enjoin a pending state prosecution." *Younger v. Harris*, 401 U.S. at 42, 91 S.Ct. at 749.

It follows that for an actual controversy to exist, something more than a hypothetical threat of prosecution must exist.

We now turn to the allegations of the instant complaint. These are the paragraphs of plaintiffs' complaint which the court feels bear most directly on the question of alleged standing:

"18. Each of the plaintiffs herein provide to consenting adults, press materials which are presumptively protected by the First Amendment to the United States Constitution and as to one plaintiff, interpretative dancing.

"19. Each of the defendants herein have openly avowed by statements made or attributed to them and/or their agents, servants and employees, that the challenged RICO Act will be strictly enforced and the defendants intend to carry out a campaign of strict enforcement of such statute to the best of their ability.

"20. There are no pending criminal prosecutions involving the enforcement of this statute and involving these plaintiffs within the State of Georgia; however, such prosecutions will be imminent and will take place once the statute becomes enforceable, unless an injunction is granted and/or a Declaratory Judgment entered holding the RICO Act to be unconstitutional."

Such unwarranted and unsupported conclusions of fact as appear in plaintiffs' paragraph 20 carry no weight in opposition to a motion to dismiss. 2A Moore, Federal Practice ¶ 12.08 (1980). As the defendants point out, plaintiffs have not alleged that they sell materials which are pornographic; they do not allege any prior convictions for obscenity; they do not allege specific threats of prosecution against them; there are no pending prosecutions; and plaintiffs have shown no imminent threat of indictment under the challenged statute. At best, their claim is that the existence of the RICO statute on the books will serve to make them feel insecure and threatened. This is quite similar to the feeling of "inhibition" alleged by the appellees in *Younger* who were found without standing. Two of the *Younger* appellees, seeking to challenge the Criminal Syndicalism Act, alleged that as members of a certain political party they advocated political and economic change and felt inhibited in so doing because of the Act and because prosecution was pending against another. The third man was a history instructor alleging that because he taught Marx and other revolutionary works he feared prosecution under the Act. The Supreme Court ruled that standing was absent. What plaintiffs have alleged here is no more concrete and definite than the allegations of those unsuccessful would–be plaintiffs.

As the Fifth Circuit has recently written in *High Ol' Times, Inc. v. Busbee*, 621 F.2d 135 (5th Cir., 1980), "the Article III requirement is satisfied ... so long as appellants have demonstrated a genuine threat of imminent prosecution. The record clearly shows, and the appellees have openly admitted, that the statute will be enforced against appellants to the fullest extent possible." Here, nothing in the record shows that the Act will apply to appellants, and there is no admission by defendants that the statute will be enforced against them. The situation in *High Ol' Times* was quite different: Those attacking the statute were numerous "head shops" whose sale of drug related objects was sought to be criminalized by statutes drawn explicitly to that end. Here, we have a statute which penalizes racketeering. There are two levels of determination which must be made before a prosecution is brought. One is whether the predicate crime has been committed, and the second is whether it was done in the course of a pattern of racketeering. The connection between our plaintiffs and racketeering is not drawn by anything in the record nor is it stipulated by any party.

Standing is not automatic. "Thus, there can be no case or controversy where parties seek adjudication of only a political question, or merely seek an advisory opinion, or where the litigation presents merely an abstract, academic or hypothetical question, or where the question sought to be adjudicated has been mooted by subsequent developments, or where the plaintiff has no standing to maintain the action." *Meltzer v. Board of Public Instruction of Orange County*, 548 F.2d 559, 569–570 (5th Cir. 1977) (footnotes omitted).

In considering the question of standing, the court is particularly concerned with the fact that the RICO act presents a large and comprehensive pattern of regulation, and the relationship of these plaintiffs to it remains so tenuous and undefined that the court would be unable to say in what manner a prosecution against them might proceed. As the July 17 order shows, most of the substantive argument directed against the statute by these plaintiffs alleged a prior restraint–a claim which the court found "does great violence to the words of the statute." On the record before the court there is an utter lack of that factual crispness required for constitutional adjudication. The court's opinion in such a case would have to be totally advisory. "The basic test for determining whether a litigant alleges a case or controversy is whether the conflicting contentions of the parties present a real and substantial controversy between persons having adverse legal interests, a dispute that is *definite* and *concrete*. [Citations omitted.] 'A hypothetical threat is not enough.' [Citation omitted.] Therefore, a plaintiff who challenges a state practice must demonstrate a realistic danger of sustaining a direct injury from its application." *Ziegler v. Ziegler*, 632 F.2d 535 (5th Cir. 1980.) (Emphasis added).

The court finds that the complaint has failed to allege a dispute which is definite and concrete, nor have plaintiffs shown any realistic danger to themselves of direct injury from the application of the statute. Accordingly, the motions of defendants to dismiss will be GRANTED.

So ORDERED.