Lee Thomas **LYNK**, Plaintiff-Appellant,

v.

**LaPORTE SUPERIOR COURT NO. 2, Hon. Don E. Harner, and Linley E. Pearson, Attorney General of Indiana, Defendants-Appellees.**

No. 85–1526.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 13, 1986.

Decided April 24, 1986.

Marshall J. Schmitt, Jenner & Block, Chicago, Ill., for plaintiff-appellant.

David A. Arthur, Deputy Atty. Gen., Indianapolis, Ind., for defendants-appellees.

Before CUMMINGS, Chief Judge, and BAUER and POSNER, Circuit Judges.

POSNER, Circuit Judge.

This appeal from a judgment for the defendants in a suit under section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, requires us to consider perplexing issues concerning the relationship between federal and state courts, arising in an unusual

factual setting. A man serving a life sentence in an Indiana prison wants a divorce, has filed for divorce, and now has turned to the federal courts for assistance in moving the divorce proceeding along to judgment. There was a time when states didn't allow a man to use his crimes as the basis for getting a divorce and when federal courts did not protect the civil rights of prison inmates. But that time, for good or ill, is past, and this case requires us to strike a delicate balance between federal rights and state prerogatives.

In Indiana, conviction of a felony subsequent to marriage is a ground for divorce, Ind.Code § 31–1–11.5–3(a)(2), and the felon can invoke the ground; this appears from the deletion of an earlier provision limiting the right to seek a divorce to the injured party. See Ind.Code § 31–1–12–3 (1971). Lynk's wife had decamped with their two children six years before he filed for divorce. Her whereabouts were and are unknown. Service of the petition for divorce was therefore by publication. The wife made no appearance and filed no answer. In these circumstances there would ordinarily be no difficulty getting the divorce. The only hitch is that the Indiana divorce statute may require the divorce court to base its decision on evidence presented in a hearing before the court. See *Flora v. Flora*, 166 Ind.App. 620, 626, 337 N.E.2d 846, 849–50 (1975). We put this proposition tentatively because in *Flora* evidence was necessary to determine whether the plaintiff had established grounds for divorce; the ground alleged was "irretrievable breakdown" of the marriage, Ind.Code § 31–1–11.5–3(a)(1), a matter of fact. Since Indiana does not recognize divorce by consent, the court must satisfy itself that a ground for divorce exists, and if the cited ground requires evidence must therefore insist on evidence. But if the ground can be established by other means than live evidence presented at a hearing, we find nothing in *Flora* to suggest that there must be a hearing anyway. In the present case the only thing necessary to show entitlement to a divorce would be public records establishing the date of Lynk's

marriage and the date of his felony conviction and as a matter of fact these dates are not in any doubt. A hearing would have served no purpose and we doubt that Indiana law requires purposeless hearings.

In his petition for divorce, however, Lynk cited irretrievable breakdown rather than felony conviction as the ground for divorce, and he requested that a date be set for him "to be present in the court room or otherwise appear for a hearing." The state judge to whom the proceeding was assigned scheduled a hearing, and Lynk then requested the judge to issue a writ of habeas corpus *ad testificandum* to enable him to appear at it. The judge refused, on the ground that Lynk had "failed to show such a fundamental interest in his appearing for hearing in this cause that his being transported to a place outside the place of confinement outweighs the State's interest in avoiding the risks and expense of such transportation." Lynk responded by filing a motion for judgment on the pleadings. This motion disclosed his alternative ground for divorce—that he had been convicted of a felony after his marriage. Nevertheless the motion was denied, without any statement of reasons. Lynk tried to get the Indiana Supreme Court to mandamus the judge to allow him to appear for the hearing, but the court refused, again without a statement of reasons, and the U.S. Supreme Court denied certiorari. Lynk did not have counsel in any of these proceedings.

With the divorce proceeding apparently stalled in the state court, Lynk brought the present suit. In it he asks for a declaration that the Indiana statute, as interpreted to prevent him from getting a divorce because he is in prison and therefore cannot show up at the mandatory hearing, violates his rights under the equal protection clause of the Fourteenth Amendment. On motion by the defendants—the court where the divorce case is pending, the judge assigned to the case, and the attorney general of Indiana, who has general responsibility for enforcing Indiana's laws—the district judge dismissed the case, without preju-

dice, on the basis of the *Younger* doctrine, which forbids federal district courts to interfere with certain types of state court proceeding. See, e.g., *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); *W.C.M. Window Co. v. Bernardi*, 730 F.2d 486, 490 (7th Cir.1984). The judge wrote an opinion which consists largely of paragraphs cut out of the defendants' brief and pasted into the opinion without even the courtesy of retyping. We have criticized this judge's practice of copying portions of the winning party's brief into his opinions before. See *Walton v. United Consumers Club, Inc.*, 786 F.2d 303 (7th Cir.1986); *Andre v. Bendix Corp.*, 774 F.2d 786, 800–01 (7th Cir.1985). We shall not repeat these criticisms. We trust the practice will now cease.

■ It is tempting to turn down Lynk's appeal simply by reference to the principle that the federal courts have no domestic relations jurisdiction, see, e.g., *Lloyd v. Loeffler*, 694 F.2d 489, 491–92 (7th Cir. 1982); *McIntyre v. McIntyre*, 771 F.2d 1316, 1319 (9th Cir.1985); *DiRuggiero v. Rodgers*, 743 F.2d 1009, 1018–20 (3d Cir. 1984), and by the observation that Lynk is asking the district court in effect to grant him a divorce. But the first premise is questionable, and the second wrong. It is true that the courts have created an exception to the diversity jurisdiction in the domestic-relations area, and although the precise scope of the exception is uncertain it clearly embraces actions for divorce. The existence of the exception rests on dubious historical, but powerful pragmatic, grounds. *Lloyd v. Loeffler, supra*, 694 F.2d at 491–92. But this is not a diversity case, and although the pragmatic objections to a federal court's trying to decree a divorce are very powerful, they would not necessarily prevent the court from doing so as a remedy for a violation of federal rights if no other remedy were feasible. Anyway, Lynk is not asking the district court to grant him a divorce. He is asking it to clear away the procedural road-blocks that are preventing him from getting any action on his divorce proceeding in state court. To this request the invocation of *Younger* is an inadequate reply.

In *Younger* the state had brought a criminal proceeding which the defendant tried to get the federal court to enjoin under 42 U.S.C. § 1983 (to which 28 U.S.C. § 2283, which forbids federal courts to enjoin state court proceedings, has been held not to apply, *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972)). The Supreme Court held that the defendant could not get the injunction. He had an adequate remedy at law (a standard ground for denying an injunction)—to assert his federal claim by way of defense to the prosecution. And the grant of an injunction would have interfered with an essential state function, the prosecution of violators of the state's criminal laws. The *Younger* doctrine has since been extended to state civil proceedings that are punitive in character, such as a proceeding to attach assets acquired in violation of state criminal law (*Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977)) or to discipline a lawyer (*Middlesex*).

■ This case is different:

1. The obvious but superficial difference is that a divorce suit is not a public action and Lynk's petition for divorce sought no relief against a state officer. Based as it is on a policy of noninterference with proceedings brought by the state itself, the *Younger* doctrine has little if any direct application to private suits. See *Evans v. City of Chicago*, 689 F.2d 1286, 1294–95 (7th Cir.1982); *Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1149–50 (2d Cir.1986); *Martori Bros. Distributors v. James-Massengale*, 781 F.2d 1349, 1355 n. 11 (9th Cir.1986); *Etlin v. Robb*, 458 U.S. 1112, 102 S.Ct. 3496, 73 L.Ed.2d 1375 (1982) (opinion of Justice White, dissenting from denial of certiorari). But in a state such as Indiana that does not permit divorce by consent, the state is in an important sense a party to every divorce suit. Lynk's uncontested divorce is stymied by the refusal

of a state judge to grant the divorce notwithstanding the defendant's (the wife's) default; the state is in effect an interested party in the divorce proceeding. Cf. *Juidice v. Vail*, 430 U.S. 327, 335–36, 97 S.Ct. 1211, 1217–18, 51 L.Ed.2d 376 (1977); *Parker v. Turner*, 626 F.2d 1, 4 (6th Cir.1980).

2. Lynk may have no adequate remedy in state court (compare *Juidice v. Vail, supra,* 430 U.S. at 337 n. 14), 97 S.Ct. at 1218—in major part because he is the plaintiff rather than, as in the usual case where the *Younger* doctrine is invoked, the defendant. Lynk seems, indeed, to be in a Catch-22 situation—unable to get a divorce to which he is clearly entitled under state substantive law, because he is in prison and therefore cannot attend the divorce hearing; unable to get the state court either to excuse his presence at the hearing or to allow him to appear for the hearing; and unable to appeal from the refusal to grant him a divorce, because the divorce case remains pending. There is no final order and no prospect that one will ever be entered. Lynk could eliminate all semblance of a *Younger* problem by dismissing his divorce suit, which he might as well do anyway since it is hopelessly stalled. Then there would be no pending state court action to impede his federal civil rights suit. Cf. *Parker v. Turner, supra,* 626 F.2d at 5. We shall come back to the issue of dismissal.

We hope we will not be thought to be embracing the false syllogism that since the *Younger* doctrine is designed mainly for cases in which the state is a party, and since there is (though again with exceptions) no requirement of exhausting state remedies in suits brought under 42 U.S.C. § 1983, a party to a private suit in state court who is unhappy with how the suit is progressing can try to derail it, accelerate it, or otherwise interfere with it by suing under section 1983. There are three obstacles to such end runs around pending state court litigation:

1. Quite apart from the *Younger* doctrine (and the *Pullman* doctrine, which may also be applicable here, as we shall see), the federal courts can in appropriate circumstances abstain in favor of a state court in which a parallel litigation is pending. See, e.g., *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818–19, 96 S.Ct. 1236, 1246–47, 47 L.Ed.2d 483 (1976); *Evans Transportation Co. v. Scullin Steel Co.*, 693 F.2d 715 (7th Cir.1982). A person may have a right to bring parallel suits in different courts but he has no right to force both courts to drop everything and conduct duplicate proceedings at the same time. That is not a problem here, however; there are no active proceedings in the state court.

2. Where the federal suit is equitable, as it is here, the plaintiff, to get relief, must show that he lacks an adequate remedy at law. The idea behind this familiar principle of equity jurisprudence is that an injunction is an extraordinary remedy—more mundanely, a more costly remedy than either damages or (in the case of a defendant who is asking for an injunction) interposing a defense to the plaintiff's suit at law. The principle may therefore seem inapplicable to a case where the alternative remedy—the divorce that Lynk is seeking in state court—is itself equitable in character though not in historical origins. (Historically, divorces were the province of the ecclesiastical courts, rather than the chancery court, of England.) There is no hierarchy among equitable remedies within the same judicial system. But where the plaintiff is seeking an injunction in one sovereign's courts (the federal courts) against or affecting another sovereign's judicial proceeding, the remedy sought is so extraordinary that the plaintiff's equitable as well as legal alternatives in the second sovereign's courts must be canvassed before the injunction is issued. That is the essential policy behind the *Younger* doctrine, and it is not limited by the conventional boundaries of that doctrine. The principle of federal equity jurisprudence that only the adequacy of alternative federal remedies is to be considered when an injunction is requested, see *Petroleum Exploration, Inc. v. Public Service Comm'n*, 304 U.S. 209,

217, 58 S.Ct. 834, 839, 82 L.Ed. 1294 (1938); *United States v. New York*, 708 F.2d 92, 93 (2d Cir.1983) (per curiam), has obviously been qualified by *Younger* (as well as by *Colorado River*). See *In re Special March 1981 Grand Jury*, 753 F.2d 575, 581 (7th Cir.1985); cf. *Northern California Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1206, 105 S.Ct. 459, 83 L.Ed.2d 388 (1984) (Rehnquist, J., in chambers). The plaintiff here, however, has not yet been shown to have any remedy in the state court system.

3. Normally when a parallel state court action is pending, the plaintiff will not be able to make a colorable claim of violation of his federal constitutional rights, and so will not be able to maintain a parallel federal suit (at least under section 1983), quite apart from any doctrines of abstention. To establish a claim under section 1983 requires that the plaintiff show a deprivation of a federal right; deprivation implies more than delay, see *Brown v. Brienen*, 722 F.2d 360, 366 (7th Cir.1983); and ordinarily therefore a claimant will not be able to establish a deprivation while the state court action is in progress (or after it is over, as we shall see). The day after Lynk filed his petition for divorce he could not have claimed that he had been deprived of his right to divorce, assuming that a deprivation of this right could violate the Constitution. An adverse interim ruling, such as a refusal to grant Lynk's motion for judgment on the pleadings, would not work a deprivation either. Even if the judge had dismissed the petition, Lynk still could not claim that he had been deprived of his right, because there would be no deprivation till he had exhausted his right to appeal from the dismissal. After all his procedural rights were exhausted the doctrines of res judicata and collateral estoppel would in all likelihood prevent a successful challenge to the state court's action, but we are interested in the case where a judgment has not yet become final. And ordinarily, as we have said, a challenge to the proceeding then will be premature because no deprivation will yet have occurred.

The same conclusion is reached by the alternative route of noting that the right that Lynk claims to have been deprived of, the right to divorce, is not a right to obtain a divorce for the asking. It is a right to obtain a divorce on specified grounds after a proceeding, which always takes *some* time, to determine whether the grounds exist. Ordinarily, therefore, until the proceeding is over there is no basis for a claim of deprivation; and ordinarily once it is over res judicata will come into play and prevent a further suit on the matter.

 This case is unusual, however, because the plaintiff argues with much show of reason that the state has put him into a deep freeze and by doing so has arbitrarily and indeed irrationally deprived him of his right to a divorce, as there are no procedures open to him under state law for getting a decision on his petition. Of course a deprivation of liberty or a denial of the equal protection of the laws is actionable even if inflicted by the state's judicial branch rather than as in the usual case by its legislature or its executive officers. The absolute immunity that state judges enjoy from federal civil rights suits, when the judge is performing judicial duties, is limited to damage actions; it does not preclude injunctive suits aimed at restraining judges from depriving persons of their federal rights. See, e.g., *Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984).

The defendants resist the characterization that they have put Lynk into a deep freeze. They suggest several possibilities—all, however, probably illusory—for Lynk's getting a final decision in his suit for divorce. The first is that he might ask the court to subpoena someone else to attend the hearing—someone who might testify that Lynk indeed committed a felony after he got married and is therefore entitled to a divorce. At oral argument in this court the defendants' counsel volunteered to testify to this himself. But no witness is necessary to establish facts of public record, which both the marriage and the

felony conviction are. If all the state court wanted was proof of the plaintiff's entitlement to a divorce it presumably would have said so, and not just refused to allow him to attend the hearing, as if his attendance were indeed a *sine qua non* of the divorce.

Second, the defendants suggest that Lynk try to prove that his interest in a divorce outweighs the risk and expense of transporting him to the hearing. But as we read the state judge's opinion, quoted earlier, the judge was not inviting an evidentiary submission; he was ruling as a matter of law that he would not grant a writ of habeas corpus *ad testificandum* merely to allow a lifer to get a divorce. Anyway Lynk's personal presence is not required—clearly not so far as his felony ground is concerned.

Third, the state argues that Lynk should have taken an interlocutory appeal from one or both of the judge's rulings. This route is closed to him now, because under Indiana law he had only 30 days to appeal from an interlocutory ruling. Ind. R.App.P. 3(B). But it can be argued that if Lynk could have appealed from the denial of the writ of habeas corpus *ad testificandum* or from the denial of his motion for judgment on the pleadings, this was all the due process of law or equal protection of the laws that he was entitled to, and so his federal claim must fail on the merits. Rule 4(B)(4) gives the Indiana Court of Appeals appellate jurisdiction over "orders and judgments upon writs of habeas corpus not otherwise authorized to be taken directly to the Supreme Court" of Indiana, but does not indicate whether this includes writs of habeas corpus *ad testificandum*. The state supreme court's jurisdiction is limited to writs involving release from custody, presumably on a more permanent basis than a writ merely directing that a person be shipped to court to give testimony. In the federal system, the grant or denial of writs of habeas corpus *ad testificandum* is appealable under the "collateral order" doctrine. See *Ballard v. Spradley,* 557 F.2d 476, 479 (5th Cir.1977); *Garland v. Sullivan,* 737 F.2d 1283, 1285 (3d Cir.1984),

aff'd in part and rev'd in part on other grounds under the name of *Pennsylvania Bureau of Correction v. United States Marshals Service,* — U.S. —, 106 S.Ct. 355, 88 L.Ed.2d 189 (1985). Indiana's counterpart to the collateral order doctrine, as we are about to see, requires the trial judge to certify the order as a pre-condition to an immediate appeal, and the judge was unlikely to do that here.

Rule 4(B)(6) of the Indiana Rules of Appellate Procedure authorizes the court of appeals to review an interlocutory order if the order involves a substantial question of law that ought to be decided immediately or if the appellant will be substantially harmed by delay (that is the counterpart to the federal collateral order doctrine). But the trial judge must certify the order before the court of appeals can review it. It seems unlikely that the judge would have certified his order, but we might be inclined to hold that Lynk had to try this route were it not for the following circumstances. The defendants, while suggesting in general terms that Lynk could have appealed from either or both of the trial judge's rulings, do not even cite the Indiana Rules of Appellate Procedure, let alone enlighten us as to their meaning and application to this case. The defendants do not suggest that Lynk was unreasonable in thinking that his best and perhaps only shot at reversing the judge's rulings was by asking the state supreme court for a writ of mandamus. They do not argue that he should have asked for mandamus to compel the judge to grant his motion for judgment on the pleadings (rather than just to compel the judge to order him to appear at the hearing). They point us to no pertinent case law on these questions and we can find none ourselves.

In any event the issue before us on this appeal is not whether Lynk was denied due process of law; it is whether the district court was right to dismiss Lynk's complaint on grounds of abstention. The court was not right to do this if when Lynk brought his federal suit there was nothing he could do any more in state court to

vindicate his right to a divorce. It may be that the state had no duty to provide additional procedures or that Lynk failed to take advantage of them and is now barred, but these things are unclear and for now the important point is that the district court was wrong to abstain in favor of state court proceedings if there were no proceedings in the offing at the time he abstained—and there were none.

Fourth, the state urges Lynk to make a more perspicuous constitutional argument to the state judge before whom the divorce suit remains pending (presumably by making a motion for reconsideration of the judge's denial of Lynk's motion for judgment on the pleadings, see *Wisconics Engineering, Inc. v. Fisher,* 466 N.E.2d 745, 752 (Ind.App.1984)), but this advice is almost certainly futile. Although Lynk did fail to articulate his constitutional claim when he asked for the writ of habeas corpus *ad testificandum* and then, when that was denied, for judgment on the pleadings, the judge must have intuited the claim for he said in denying the writ that Lynk had not asserted so "fundamental" an interest as would justify allowing him to be transported outside of the prison for the hearing. This is the language of constitutional law. Since Lynk had indicated in requesting a hearing date that he was not insisting on a personal appearance, and later backed that up by moving for judgment on the pleadings when his petition for a writ of habeas corpus *ad testificandum* was denied, it seems the state judge just does not think that Lynk's interest in getting a divorce justifies any accommodation to Lynk's status as a prisoner. The mandamus route was tried (unlike *Texaco Inc. v. Pennzoil Co., supra,* 784 F.2d at 1151) but without success. Lynk even tried, again without success, to get the U.S. Supreme Court to review the denial of mandamus. There is no order from which the plaintiff can appeal and little prospect that one will ever be entered. Some allowance is due the fact that Lynk had no lawyer in state court.

Fifth, the state suggests that Lynk can still get appellate review of the state judge's refusal to act on the divorce petition, by dismissing the petition voluntarily and then appealing the dismissal. This is wrong too unless Indiana's rule on voluntary dismissals, identical though it materially is to Rule 41(a) of the Federal Rules of Civil Procedure, is interpreted differently by the Indiana courts—a question on which we can find no cases. Put aside the problem that a dismissal by notice, without court action, does not involve the issuance of any judicial order and that it is from judicial orders that appeals are taken. An even more fundamental point is that voluntary dismissals are appealable only if one of the parties objects to a condition imposed by the court. See 9 Wright & Miller, Federal Practice and Procedure § 2376, at pp. 246–47 (1971). If Lynk dismisses his divorce proceeding by filing a notice of dismissal, as he can do under Ind.R.Trial P. 41(a)(1) (as under Fed.R.Civ.P. 41(a)(1)) because no responsive pleading has yet been filed, there will be no conditions, and therefore no basis for an appeal.

A possibility exists that Lynk might obtain an appealable order by asking the judge to dismiss the divorce petition involuntarily. The authority would be *United States v. Procter & Gamble Co.,* 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). The defendants in a government antitrust suit moved for disclosure of grand jury minutes, the district court entered an order compelling disclosure, and the government announced that it would not obey the order and moved the district court to dismiss the complaint, which the court did. The Supreme Court refused to treat this as a voluntary dismissal, and held that it was an appealable final judgment. *Id.* at 680–81. In effect the government was proposing dismissal rather than contempt as the appropriate sanction for its contumacy; it chose its own poison, as it were; the death sentence however had been signed by the court. Here, since no order has been entered compelling the plaintiff to do anything, he cannot by disobeying such an order precipitate the imposition of a sanc-

tion, whether dismissal or something else, that might be appealable. In the absence of the special circumstances of the *Procter & Gamble* case, it is hard to distinguish a request for an involuntary dismissal from a motion for a voluntary dismissal. See Rule 41(a)(2). Granted, this conclusion is rather unsatisfactory on practical grounds, as it seems to leave a plaintiff whose case has been completely frustrated by a judicial ruling without appellate recourse. Maybe the holding of *Procter & Gamble* should be extended to reach this case. But whether Indiana would do this is too uncertain for us to make Lynk seek an involuntary dismissal or fault him for having failed to do so on his own initiative.

■ We have not completed our canvass of the possible arguments against the district court's retaining Lynk's civil rights case. The judge-made doctrine that prevents federal courts from adjudicating certain types of domestic relations case under the diversity jurisdiction can be restated as a doctrine of abstention also applicable to cases brought in federal court under the federal-question jurisdiction, see *Kenner v. Morris*, 600 F.2d 22, 24 (6th Cir.1979) (per curiam); *Williams v. Williams*, 532 F.2d 120, 122 (8th Cir.1976) (per curiam); *Gras v. Stevens*, 415 F.Supp. 1148, 1154 (S.D.N.Y.1976) (three-judge court) (Friendly, J.) (alternative holding); but abstention on whatever basis presupposes that the plaintiff can press his claim in the alternative forum, see *Mendez v. Heller*, 530 F.2d 457, 461 (2d Cir.1976) (concurring opinion), a condition seemingly not fulfilled in this case. If the federal courts' traditional disclaimer of any domestic relations jurisdiction were taken to mean that such a court would in no circumstances consider granting a divorce, one might wonder how a judgment in Lynk's favor could be made effective if the state court adamantly refused to grant him a hearing. But there are other remedies that the federal court could use to get its judgment obeyed. Considerations of remedy, and of the traditional limitations on the power of the federal courts in domestic relations matters, did not stop the Supreme Court from holding

in *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), also a suit in federal court under 42 U.S.C. § 1983, that a state could not constitutionally require an indigent to pay a filing fee as a condition of obtaining a divorce.

The most significant obstacle to Lynk's maintaining this suit may seem to be the principle that, except in a habeas corpus case, no federal court other than the Supreme Court has jurisdiction to review the decision of a state court. See, e.g., *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (for these purposes the District of Columbia Court of Appeals is the equivalent of the highest court of a state, see 28 U.S.C. § 1257); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923); *Hameetman v. City of Chicago*, 776 F.2d 636, 640 (7th Cir.1985); *Community Action Group v. City of Columbus*, 473 F.2d 966, 973 (5th Cir.1973). The effect of such a jurisdiction would be to displace almost the whole of state litigation into the federal courts by making the final judgment in the state court the cause of action that kicks off a suit to undo that judgment in federal court. Consistently with the principle and the policy that animates it the federal courts have steadily rebuffed efforts to retry state suits in federal courts under section 1983 at the behest of the loser in that suit, who argues that the judgment against him in the state suit deprived him of liberty or property without due process of law. See, e.g., *Bloomer Shippers Ass'n v. Illinois Central Gulf R.R.*, 655 F.2d 772, 776 (7th Cir.1981); *Dahl v. Akin*, 630 F.2d 277, 281–82 (5th Cir.1980); *Torres v. First State Bank*, 588 F.2d 1322, 1326–27 (10th Cir.1978). It makes no difference if the adverse judgment in the state suit was against the plaintiff in that suit, who then argues that by failing to vindicate his claim to liberty or property the state court deprived him of it without due process of law. This absurd result is blocked simply by noting that an adverse judgment, even one that is erroneous as a matter of state or

even federal law, is not a denial of due process.

▮▮▮ The question, however, is the application of this principle to a case where no final judgment has been or is likely ever to be entered. An essential strut beneath the policy is the existence of jurisdiction in the Supreme Court to review any dispositive federal questions involved in the state proceeding. That jurisdiction does not depend, it is true, on the proceeding's having gone to final judgment in the usual sense, for a litigant who is stymied by a procedural ruling from which he cannot appeal can ask the U.S. Supreme Court to review that ruling; it is the final decision rendered "by the highest court of a State in which a decision could be had." 28 U.S.C. § 1257; see Stern, Gressman & Shapiro, Supreme Court Practice §§ 3.14–.15 (6th ed. 1986). Nor does the Supreme Court's jurisdiction depend on whether the state court addressed the question; it is enough that a federal claim was made, and not accepted. See, e.g., *New York ex rel. Bryant v. Zimmerman*, 278 U.S. 63, 67, 49 S.Ct. 61, 63, 73 L.Ed. 184 (1928); *Illinois v. Gates*, 462 U.S. 213, 218 n. 1, 103 S.Ct. 2317, 2321 n. 1, 76 L.Ed.2d 527 (1983). But if the federal question was neither raised nor decided, the Supreme Court does not have jurisdiction. See 28 U.S.C. § 1257; *Wood v. Orange County*, 715 F.2d 1543, 1546–47 (11th Cir.1983); cf. *District of Columbia Court of Appeals v. Feldman, supra*, 460 U.S. at 482 n. 16, 103 S.Ct. at 1315 n. 16.

▮▮▮ Of course we do not suggest that a litigant in state court can obtain judicial review in a federal district court (with appeal to the court of appeals and then a right to ask the Supreme Court for review on certiorari) simply by failing to raise his federal questions in the state court. The rules of res judicata will prevent this result once the judgment in the state court proceeding becomes final; before it becomes final the result will be prevented by a veritable barrage of grounds—waiver or forfeiture, doctrines of abstention, and the fact that an interim ruling is not (not usually, anyway) a deprivation of the substantive right at stake in the litigation. But there will be no jurisdictional bar. The door will be open a crack, to make sure the state cannot block access to the federal courts by refusing to allow a state court litigant to raise federal questions in state court.

▮▮▮ But maybe such blockage is impossible. A state's unreasonable refusal to allow federal questions to be presented in its courts would itself be a violation of the Constitution's supremacy clause which the Supreme Court could rectify on direct review of the state court's judgment. But we do not think that the possibility of obtaining Supreme Court review by this route prevents the lower federal courts from enforcing federal rights that arise out of proceedings in state court in which those rights cannot be vindicated. For one thing it is an open question whether state courts must entertain claims under 42 U.S.C. § 1983, see *Martinez v. California*, 444 U.S. 277, 283 n. 7, 100 S.Ct. 553, 558 n. 7, 62 L.Ed.2d 481 (1980), and that might be the nature of Lynk's claim had he tried to inject federal questions into his divorce suit. For another thing the suggested route contemplates two stages of review by the Supreme Court: first, review of the state court's refusal to allow federal questions to be raised before it; second, review of that court's rulings on those questions after it is told it must entertain them. This procedure is not only cumbersome, but completely inadequate in the common case where the litigant is not able to demonstrate, without creating a new record, that the state prevented him from raising his federal issues in state court. In such a case he will have to bring a separate proceeding in federal district court in order to establish this collateral violation of his federal rights. Finally, if a state refuses to allow federal rights to be enforced in its courts it can hardly object to the federal courts' enforcing them, merely because the Supreme Court might—though with difficulty—obtain jurisdiction over the state court's rulings indirectly.

▮▮▮ The defendants have not yet shown that Lynk either now has or has

ever had a realistic opportunity to raise his federal grounds in state court. When he filed his divorce suit he had no reason to think that he had to mount a federal challenge to Indiana's procedures for divorce, for he had no reason to believe that those procedures would prove a serious obstacle to his getting the divorce. Even when the judge turned down his application for a writ of habeas corpus *ad testificandum,* this could not have seemed a serious setback, since Lynk evidently was entitled to a divorce without appearing in person at a hearing. His appropriate move, which he made, was to ask for judgment on the pleadings, and again there was no occasion to present federal grounds. It is not clear what if any remedies Lynk had left in the state court system when the judge turned him down. Maybe he should have asked for reconsideration, presenting his federal grounds, and maybe by failing to do so he forfeited any right to pursue his federal claims in another forum—but the defendants do not argue forfeiture, and a defense of waiver can itself be waived by not being raised. See *Jordan v. Kelly,* 728 F.2d 1, 4 (1st Cir.1984); cf. *Carbajol v. Fairman,* 700 F.2d 397, 399 (7th Cir.1983); *Walberg v. Israel,* 766 F.2d 1071, 1072 (7th Cir.1985).

 Another principle of possible relevance to this surprisingly complex case is that there is no federal constitutional right to an appeal. See, e.g., *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983); *Abney v. United States,* 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651 (1977). The significance of this principle in an age when the right of appeal from final judgments is universal is by no means clear; it seems inconceivable for example that due process would be interpreted today to allow a state to execute a criminal defendant without giving him any right to appeal from his conviction and sentence. Perhaps it is only a little less inconceivable that a state would be allowed to deny a person a divorce to which he was entitled as a matter of substantive right, on the basis of an unappealable decision of a judge of its divorce court. So even if Lynk's essential claim is that the

state has simply failed to provide a usable appellate remedy against the kind of errors that the trial judge allegedly made, the claim may have some merit. And an alternative characterization is that the state with one hand has created an entitlement to divorce and with the other has irrationally withheld it merely because Lynk is a prisoner. If he were not a prisoner he could have shown up at the divorce hearing under his own steam and thereby obtained a final judgment, appealable if adverse, on his petition. The state may not be constitutionally obligated to create appellate remedies but having done so it may not arbitrarily deny them to a particular class of litigants. See, e.g., *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); *Texaco Inc. v. Pennzoil Co., supra,* 784 F.2d at 1154.

 At all events it is apparent that the dismissal of Lynk's civil rights suit on the ground given by the district court and defended by the state in this court was erroneous, so that the case must be remanded; we need not decide whether he can win on the merits. Indeed, the district judge may still be able to avoid reaching the merits. We noted earlier that a federal judge is not obliged to issue an injunction interfering with the operations of a state court if the plaintiff has an adequate remedy in state court. Lynk just may have such a remedy. The chance that he does is not so good that *dismissal* of his suit is warranted under the *Younger* doctrine, broadly construed to embrace private litigation in which the state has a definite interest, or under a broader concept of comity of which the *Younger* doctrine is but one instance. But a *deferral* of equitable relief may be warranted. As we said earlier, Lynk can dismiss his divorce case by notice. The dismissal will be without prejudice to his filing another petition for divorce, this time making clear his felony ground for divorce (which does not, as a matter of logic and common sense anyway, require an evidentiary hearing) and also making clear the constitutional objections to denying him a divorce merely because he

is a prisoner and therefore cannot freely appear at a hearing on his petition for a divorce. He will not be met by any defense of res judicata or collateral estoppel; dismissal without prejudice has, by definition, no preclusive effect. It will be as if the first divorce action had never been filed. *Burnett v. Camden,* 253 Ind. 354, 357–58, 254 N.E.2d 199, 201 (1970); *Board of Commissioners v. Nevitt,* 448 N.E.2d 333, 339 n. 5 (Ind.App.1983).

 We think Lynk must follow this route. Comity—the deference that one sovereign owes another—requires that Lynk give the state court system a full opportunity to adjudicate his claim for a divorce before asking the federal court to enjoin the state court judge from denying the claim because of Lynk's being a prisoner. Lynk was without assistance of counsel (he is no longer, and we trust that his able appointed counsel will continue to represent him in the state court proceedings) and maybe the state judge just didn't comprehend the nature and grounds of his suit.

 Since the solution we have prescribed may not work, and since we have no desire to invite further appeals, we shall try to frame the analysis on the merits that the district court will have to conduct if Lynk is unable to get a decision on the merits of his divorce suit from the Indiana state courts. The Supreme Court has invalidated unreasonable restrictions on marriage and divorce under both the due process clause (*Boddie*) and the equal protection clause (*Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 434 U.S. 374 (1978)). Lynk's claim evokes both equal protection and due process. Insofar as he is complaining about the arbitrariness of the state court's refusing to grant him a divorce on grounds of irretrievable breakdown merely because he is in prison, he is claiming a denial of equal protection of the laws. Insofar as he is complaining about the refusal to grant him a divorce based on his felony conviction, his claim fits more comfortably the due process mold, for he is saying that the state has erected an insuperable and irrational procedural obstacle

to his divorce, by requiring that he attend a completely unnecessary hearing in order to get the divorce and then forbidding him to leave the prison so that he can attend it. The state has, we should think, a right to limit the marital rights of its inmates, see *Bradbury v. Wainwright,* 718 F.2d 1538 (11th Cir.1983) (though *Safley v. Turner,* 777 F.2d 1307, 1314 (8th Cir.1985), seems to doubt this), and an even clearer right to limit the travel of dangerous prisoners outside prison walls (dangers dramatically illustrated by the facts of *United States v. Silverstein,* 732 F.2d 1338 (7th Cir.1984)). But so far as appears Indiana places no relevant limitations on the rights of prisoners to marry and divorce, and has no interest in requiring Lynk to attend the hearing on his uncontested petition for divorce—a divorce to which he seems clearly entitled under state law.

 It can hardly matter in this case whether the right to marry and the right to divorce stand on the same footing so far as the constitutional power of the states is concerned. We shall not try to add to the scholarly discussion of this question in *Murillo v. Bambrick,* 681 F.2d 898, 902–03 (3d Cir.1982), beyond noting the simple point that all civilized societies recognize a right to marry, and not all a right to divorce. For it seems unimportant in this case whether the right to divorce is thought fundamental (a conclusion hard to square with *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975)) or incidental. That question might be important if Lynk had to show a denial of equal protection, or were claiming a substantive federal right to be allowed to divorce ("substantive due process"). But his essential claim is simply that the state has used an arbitrary procedure to deprive him of a liberty created by the state—liberty to divorce, on whatever grounds for divorce the state recognizes—without due process of law. While as we have said there may be no constitutional right to divorce—and certainly Lynk is not complaining about the grounds on which Indiana allows a divorce to be granted—if the right to marry and divorce is among

the liberties encompassed by the due process clause the state can deprive a person of the right only if the state does so in accordance with due process of law. This conclusion was the necessary foundation of the *Boddie* decision, see, e.g., 401 U.S. at 379, 91 S.Ct. at 786, and survives, we believe, the *Sosna* decision, see 419 U.S. at 410, 95 S.Ct. at 562.

We are not sure *why* Lynk wants a divorce; but the record does not reveal whether he is imprisoned for his natural life or may someday be released; and even if the former is true, some "lifers" do get married in prison, which the plaintiff cannot do until he gets a divorce from his present wife. In any event, the mere fact that we may not understand the plaintiff's motives is not important. Divorce does not interfere with prison discipline or security or with the aims of punishment, unless a personal appearance outside the prison is required, and no one has yet been able to supply a reason why it might be here.

Granted, the divorce petition cited irretrievable breakdown rather than felony conviction as the ground for divorce. But Lynk did eventually apprise the state court of his alternative ground, and, more important, his grievance is not limited to the state court's refusal to consider his felony conviction. Even if the court was entitled to insist that Lynk adhere to his original ground—irretrievable breakdown—it doesn't follow that it could prevent him from establishing that ground by simultaneously requiring and forbidding his personal attendance at the hearing that he had requested. As a matter of fact Lynk's presence probably was not necessary under Indiana law even for him to be able to give testimony. Rule 32(A)(3)(c) of the Indiana Rules of Trial Procedure provides that a deposition may be used as evidence if the deponent cannot testify in person because he is in prison. The rule is applicable to all civil actions (see Rule 1), apparently including divorce actions. See *In re Marriage of Lopp*, 370 N.E.2d 977, 982 (Ind.App.1977), aff'd in relevant part, 268 Ind. 690, 378 N.E.2d 414 (1978). The judge in Lynk's divorce case may well have committed an error of state law when he refused to act on the petition for divorce merely because he was unwilling to have Lynk testify— even if he did not commit an error of state law by requiring an evidentiary hearing (that depends on how broadly the *Flora* decision is read).

The most difficult question that the district judge will have to answer on remand (when and if he must decide the merits) is whether any denial of due process in the state trial court was cured by remedies (motion for reconsideration, interlocutory appeal, mandamus to compel the grant of a motion for judgment on the pleadings—perhaps others) that Lynk did not avail himself of. In considering whether the state has provided a person with the process that is due him one must consider appellate as well as trial-court remedies; it makes a difference whether Lynk was merely the victim of erroneous rulings by an individual judge or whether the State of Indiana has armed its judges to deny state-created rights of liberty or property on irrational grounds irremediable by appeal. See *Ellis v. Hamilton*, 669 F.2d 510, 514–16 (7th Cir.1982). Although the defendants have not yet shown that Lynk ever had usable appellate remedies, the question whether he did will remain open if the district judge finds it necessary to decide the merits of Lynk's constitutional claim.

Our repeated reference to the possibility that the state trial judge committed errors of law requires that we consider, finally, the possibility of upholding the dismissal of Lynk's suit under the doctrine of *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). See *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236–37, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984); *Waldron v. McAtee*, 723 F.2d 1348 (7th Cir. 1983); *Ziegler v. Ziegler*, 632 F.2d 535, 539 (5th Cir.1980) (per curiam). This doctrine authorizes, and in appropriate cases directs, a district court to withhold decision of a federal constitutional issue pending determination in state court of an issue of

state law which may, depending on how it is resolved, moot the constitutional issue. The present case, however, is not a suitable one for applying the doctrine—quite apart from the fact that if the plaintiff wants to reserve his federal questions for decision by the federal court the proper means of implementing the *Pullman* doctrine is by staying, not dismissing, the federal court action. *Mazanec v. North Judson-San Pierre School Corp.*, 750 F.2d 625, 627 (7th Cir.1984).

Everyone recognizes that abstention under *Pullman* is a great time waster (see references in *Waldron v. McAtee, supra*, 723 F.2d at 1351), because it means that the plaintiff has to start over in state court, perhaps many years after he began his federal court proceeding. The waste is justified only when there are large benefits, as when a statute or ordinance can be saved by a narrowing construction. In this case there is no challenge to a statute or ordinance, but only to the application of a statute in apparent contravention of state law. The consequences to the state of losing this federal suit are less, and the equity of spinning out the proceedings to require Lynk to bring a new action in state court (his second state court suit, and his third suit in all) is weaker.

Abstention under *Pullman* presupposes, moreover, that there is an available forum in which to bring a state action, and we doubt that there is one here. True, Lynk could bring a suit for declaratory judgment under Ind.Code § 34-4-10-2 to get a ruling that the divorce law does not require his personal appearance; and in such a suit there would be no issue of his having to appear in person since he would be raising a pure issue of law. But the court would probably refuse to issue such a ruling, regarding the proceeding as a collateral attack on the ruling in Lynk's divorce case that he must (and cannot be allowed to) appear in person at the divorce hearing. Cf. *Thompson v. Medical Licensing Bd.*, 180 Md.App. 333, 389 N.E.2d 43, 50 (1979). The uncertainty is too great to justify invoking the Pullman doctrine. Cf. *Mazanec v. North Judson-San Pierre School Corp.*, 763 F.2d 845 (7th Cir.1985).

All this assumes of course that the divorce proceeding remains pending—though in its current stalled state which makes it useless for obtaining an authoritative ruling on the issues of state law that the proceeding raises. If Lynk dismisses the suit voluntarily, that obstacle to his bringing a declaratory judgment action will disappear. But since we are requiring him to dismiss it voluntarily as a condition of his being allowed to maintain his federal suit ("voluntarily" in a somewhat Aesopian sense, we grant), in the hope that by refiling his petition for divorce he can clear the roadblocks to action on it, it would be an act of supererogation to require him to bring a declaratory judgment proceeding as well—especially since it is not at all clear that the Indiana courts would entertain such a proceeding while a divorce proceeding (his second) was also pending.

The procedure we have said Lynk must follow—to dismiss his divorce suit voluntarily, and then refile the suit—may seem to be the same as abstention under *Pullman*, but it is not; not quite, anyway. It is not a matter of trying to save a statute or ordinance by a narrowing construction, but of testing whether the state really is depriving the plaintiff of a constitutionally protected liberty. If Lynk has been unreasonably stymied in his quest for an adjudication of his right to a divorce, he has raised a serious federal question. If he is not yet stymied, a decision on the merits would be premature. To find out whether it would be premature further proceedings in the state courts are necessary. The burden on Lynk of refiling an uncontested divorce suit should be less than that of bringing a declaratory judgment suit, which would be vigorously contested, against the defendants in the present case.

When abstention under *Pullman* is ordered, the plaintiff can as we said reserve his federal questions for federal court; but if Lynk refiles his divorce action he had better present any federal as well as state claims that he has to the state

court, because any final judgment on the merits in the action will be res judicata as to any issues, federal or state, that he could have raised in the action. This, however, will not put him in any worse position than any other person who wants a divorce in Indiana and has federal as well as state grounds; such a person must present all his grounds in his divorce suit. We may assume that if Indiana had a rule of some sort that barred Lynk's divorce on grounds that might violate the federal Constitution, he could as an alternative to filing for divorce bring a federal civil rights suit to enjoin the enforcement of the policy (see *District of Columbia Court of Appeals v. Feldman, supra,* 460 U.S. at 486, 103 S.Ct. at 1317); and if abstention were ordered in that suit on the authority of *Pullman,* he could reserve the federal issues for the federal court. But there is no reason to believe that Indiana has any rule that might prevent Lynk from getting a divorce. An individual state judge has erected seemingly arbitrary procedural obstacles to the adjudication of Lynk's petition for divorce. Once it becomes clear that those obstacles exist and prevent Lynk from obtaining an adjudication of any of the state or federal grounds that he might advance in support of the petition for divorce, Lynk can proceed with this federal suit. But it is not clear yet that any insuperable obstacles do exist. Lynk may not have presented a clear enough case, though through no fault of his own. We think that in the interest of comity he should be required to try again, which he can do simply by voluntarily dismissing his case and refiling it. The fact that he will have to try to get his federal claims decided in state court, with possible preclusive effect if the state case goes to judgment, is an acceptable price for minimizing the inevitable frictions of a federal system—at least in the highly unusual circumstances of this case. Any other result would, moreover (as we have said), put Lynk in a better position than any other Indianans with state or federal grounds for thinking themselves entitled to a divorce.

The judgment is reversed and the case remanded to the district court. The district court shall retain the case on its docket but shall take no further action in it until Lynk voluntarily dismisses his divorce suit and files a new one. The course of the new proceeding will determine the future actions of the district court in this case in accordance with the principles discussed in this opinion.

REVERSED AND REMANDED, WITH DIRECTIONS.